UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

SCOTT ANDREW WITZKE,

      Plaintiff,                               Case No. 21-cv-11346
                                                Hon. Matthew F. Leitman

v.

JORDAN RIECK, *et al.*,

      Defendants.

_____/

**ORDER (1) DENYING PLAINTIFF'S MOTION TO STRIKE
(ECF No. 46); (2) GRANTING IN PART DEFENDANT McLEAN'S
MOTION TO DISMISS (ECF No. 17); (3) DISMISSING *SUA SPONTE*
PLAINTIFF'S STATE LAW CLAIM AGAINST DEFENDANT McLEAN
WITHOUT PREJUDICE; AND (4) DENYING PLAINTIFF'S
MOTION FOR DISCOVERY (ECF No. 49)**

On July 30, 2019, Michigan State Police Trooper Robert Allen McLean arrested Plaintiff Scott Andrew Witzke and took Witzke to a Michigan State Police ("MSP") post. According to Witzke, McLean released him from MSP custody that same day, but he (Witzke) was then immediately taken into custody by officers from the City of Madison Heights Police Department. Witzke says that those officers held him "incommunicado" for three days.

Witzke now brings claims under 42 U.S.C. § 1983 and Michigan common law against Trooper McLean, the Madison Heights officers with whom he had contact, and the City of Madison Heights. Witzke acknowledges that his initial arrest by Trooper McLean was valid. But he says that his rights were violated when,

1

following his release from MSP custody, he was seized for a second time and taken into custody by the Madison Heights officers. He contends that the second seizure was unlawful because there no probable cause to believe that he had committed a crime in the City of Madison Heights or committed a new crime after his initial arrest. He further claims that his rights were violated again when he was not taken before a judicial officer within 48 hours after Trooper McLean arrested him.

Trooper McLean has filed a motion to dismiss the claims asserted against him pursuant to Federal Rule of Civil Procedure 12(b)(6). (*See* Mot., ECF No. 17.) Trooper McLean argues that Witzke has failed to plead a viable claim against him under either Section 1983 or Michigan common law and that, in addition, he is entitled to qualified immunity from Witzke's Section 1983 claim.

As to Witzke's Section 1983 claim, the Court finds that Trooper McLean is entitled to qualified immunity. Therefore, for the reasons explained in more detail below, the Court **GRANTS IN PART** Trooper McLean's motion and **DISMISSES** Witzke's federal claim against Trooper McLean **WITH PREJUDICE**.

With respect to Witzke's remaining state-law claim for false arrest against Trooper McLean, the Court concludes that it would be most appropriate to have that claim adjudicated by a state court. Accordingly, the Court will exercise its discretion under the supplemental jurisdiction statute, 28 U.S.C. § 1367, to *sua sponte*

**DISMISS** Witzke's state-law false arrest claim against Trooper McLean **WITHOUT PREJUDICE**.

## I

## A

Witzke's allegations, which the Court must accept as true for purposes of Trooper McLean's motion to dismiss, are straightforward.  He lays out the following version of events in his Complaint.

Trooper McLean conducted a traffic stop of Witzke's vehicle on July 30, 2019, in Farmington Hills, Michigan. (*See* Compl. at ¶ 11, ECF No. 1, PageID.4.) Trooper McLean then validly arrested Witzke "for a felony state narcotics violation, probation violation, and receiving and concealing stolen property." (*Id.* at ¶¶ 12, 30, PageID.4, 9.)

After arresting Witzke, Trooper McLean brought him (Witzke) to the Oak Park MSP Post (the "MSP Post"). (*See id.* at ¶ 13, PageID.4.)  At the MSP Post, "[Trooper] McLean did not cause [Witzke] to be taken promptly before a judicial officer for arraignment after detaining [Witzke] at the MSP Post; instead, [Trooper] McLean released [Witzke] from MSP custody" that same day. (*Id.* at ¶¶ 14–15, PageID.5.)

"[A]fter [Trooper] Mclean released [Witzke] from MSP custody, [Witzke] was not allowed to leave the MSP Post on his own accord; instead, [Madison Heights Police Department Officers] Howard and Kowalski caused [Witzke] to be handcuffed and placed into a City of Madison Heights road patrol vehicle." (*Id.* at ¶ 15, PageID.5.)   According to Witzke, this constituted a "second" and "separate 'arrest[]'" apart from his initial arrest by Trooper McLean. (Supp'l Resp., ECF No. 49, PageID.400.)

"Neither [Officer] Kowalski nor [Officer] Howard informed [Witzke] why he was being forcibly and against his free will being [sic] taken into custody by the City of Madison Heights Police." (Compl. at ¶ 15, ECF No. 1, PageID.5.)   Moreover, Officers Kowalski and Howard took Witzke into custody even though, according to Witzke, they had "[n]o probable cause […] to charge [Witzke] with any crimes committed within the City of Madison Heights." (*Id.* at ¶ 25, PageID.7.)

After Officers Kowalski and Howard took Witzke into custody, they transported Witzke to the Madison Heights Police Department and "'booked' [him] into that facility." (*Id.* at ¶¶ 15, 16, PageID.5.)   The Madison Heights Police Department then held Witzke "incommunicado" for three days, until August 2, 2019. (*Id.* at ¶ 16.)

While Witzke was in custody at the Madison Heights Police Department, Madison Heights Detective Jordan Rieck offered Witzke the opportunity to cooperate with an ongoing investigation into a narcotics trafficking operation. (*See id.* at ¶¶ 17–18, PageID.6.)  Witzke accepted the offer.  He entered into a "verbal agreement" to help "mak[e …] three drug cases against other persons." (*Id.* at ¶ 19, PageID.6.)   In exchange, Rieck and another Madison Heights Detective, Craig White, agreed that Witzke would "not be[] charged with narcotics violations." (*Id.*)  "Neither [Trooper] McLean nor any other MSP Troopers were working in conjunction or jointly with Madison Heights Police in [the] narcotics investigation" with which Witzke agreed to cooperate. (*Id.* at ¶ 20, PageID.7.)

Witzke lived up to his end of the deal, but Detectives Rieck and White did not. (*See id.* at ¶¶ 22, 23.)  On or about October 2, 2019, Witzke was charged with narcotics violations even though he had fully cooperated in making drug cases against three other persons. (*See id.* at ¶ 24.)

**B**

Witzke filed this action on June 9, 2021. (*See* Compl., ECF No. 1.)  He names as Defendants: (1) Trooper McLean; (2) Rieck, White, Kowalski, and Howard of the Madison Heights Police Department; and (3) the City of Madison Heights.  (The Court will hereafter refer to all of the individual Defendants other than Trooper McLean as the "Madison Heights PD Defendants.")

5

In his Complaint, Witzke brings the following three claims:

(1) In Count I (the "Fourth Amendment Claim"), Witzke alleges that Trooper McLean and the Madison Heights PD Defendants "caused [Witzke] to be unreasonably seized, in violation of U.S. Const., Amendment IV […] without the necessary requisite probable cause sufficient to arrest [Witzke] for [a] crime committed after [Witzke's] initial valid arrest and detention by [Trooper] McLean, and the seizure which resulted in [Witzke] being handcuffed, transported to the City of Madison Heights Police Department, 'booked,' and held incommunicado from on or about July 30, 2019 through August 2, 2019 was done solely for investigative purposes." (*Id.* at ¶ 30, PageID.9.);

(2) In Count II (the "*Monell* Claim"), Witzke alleges that the "City of Madison Heights in implicitly authorizing and/or knowingly acquiescing in its police officers engaging in rampant seizures of persons without the requisite probable cause sufficient to arrest those persons for crime committed and solely for investigative purposes in the name of the 'war on drugs,' as well as the City['s] failure to properly and adequately train and supervise its police officers, caused, in part, [Witzke's] unreasonable seizure on or about July 30, 2019 through on or about August 2, 2019 by Defendants Howard, Kowalski, Rieck, and White." (*Id.* at ¶ 32, PageID.9–10.); and

(3) In Count III (the "False Imprisonment Claim"), Witzke alleges that "each named Defendant caused [Witzke] to be falsely imprisoned at the City of Madison Heights Police Department from on or about July 30, 2019 through on or about August 2, 2019, and each named Defendant is liable to [Witzke] for such false imprisonment under Michigan common law." (*Id.* at ¶ 34, PageID.10.)

## C

On August 27, 2021, Trooper McLean filed the instant motion to dismiss Witzke's claims against him – the Fourth Amendment Claim and the False Imprisonment Claim – pursuant to Federal Rule of Civil Procedure 12(b)(6). (*See* Mot. to Dismiss, ECF No. 17.)  Trooper McLean argues that (1) Witzke has failed to state a claim against him (McLean) for violation of the Fourth Amendment or

Michigan law; and (2) he (Trooper McLean) is entitled to qualified immunity on Witzke's Fourth Amendment Claim. (*See id.*)

Witzke filed a response[1] in opposition to Trooper McLean's motion on October 5, 2021. (*See* Resp., ECF No. 22.) In his response, Witzke declined to respond to Trooper McLean's qualified immunity argument on the sole basis that, under *Wesley v. Campbell*, 779 F.3d 421 (6th Cir. 2015), it would be inappropriate for this Court to grant a Rule 12(b)(6) motion to dismiss on qualified immunity grounds. In its entirety, Witzke's argument on this issue was as follows:

> Defendant McLean has made an argument that he is entitled to "qualified immunity" because "he did not violate Wtizke's clearly established constitutional rights." (DE 17, PageID No. 88) This argument can be addressed with dispatch here. The Sixth Circuit holds:
>
>> [I]t is generally inappropriate for a district court to grant a 12(b)(6) motion to dismiss on the basis of qualified immunity. Although an officer's entitlement to qualified immunity is a threshold question to be resolved at the earliest possible point, that point is usually summary judgment and not dismissal under Rule 12.
>
> *Wesley v. Campbell*, 779 F.3d 421, 433-34 (6th Cir. 2015) (Quotations, brackets, and citations omitted).

(*Id.*, PageID.131.)

---

[1] Witzke denoted this filing a "Reply," but the Court understands it to be a response to Trooper McLean's motion to dismiss.

On November 17, 2021, this action was reassigned to this Court from then-Chief Judge Denise Page Hood. (*See* Order of Reassignment, ECF No. 27.) Following that reassignment, this Court carefully reviewed Trooper McLean's motion to dismiss and decided that the appropriate course of action was to offer Witzke an opportunity to amend his Complaint before the Court proceeded to rule on the motion.  To that end, the Court entered an order granting Witzke leave to amend (the "Order Granting Leave to Amend"). (*See* Order Granting Leave to Amend, ECF No. 28.)  The Court explained, in relevant part, as follows:

> Without expressing any view regarding the merits of the motion to dismiss, the Court will grant Witzke the opportunity to file a First Amended Complaint in order to remedy the alleged deficiencies in his claims identified by McLean in the motion to dismiss. The Court does not anticipate allowing Witzke another opportunity to amend to add factual allegations that he could now include in his First Amended Complaint. Simply put, this is Witzke's opportunity to allege any and all additional facts, currently known to him, that may cure the alleged deficiencies in his claims.
>
> **By December 23, 2021**, Witzke shall notify the Court and McLean in writing whether he will amend the Complaint. If Witzke provides notice that he will be filing a First Amended Complaint, he sha ll file that amended pleading by no later than **January 6, 2022** . Upon the filing of a First Amended Complaint, the Court will terminate without prejudice McLean's currently pending motion to dismiss as moot.
>
> If Witzke provides notice that he w ill not be filing a First Amended Complaint, the Court will rule upon the currently-pending motion to dismiss.

(*Id.*, PageID.145.)

Witzke rejected the Court's offer to permit him to amend his Complaint. (*See* Witzke Notice, ECF No. 32.)  Instead of amending his Complaint, he criticized the Order Granting Leave to Amend as "highly inappropriate," and he insisted that "the admonishment to [Witzke] by the Court in its Order regarding the potential future filing of an amended complaint is legally unsound in the current procedural posture of this case." (*Id.*, PageID.155–156.)  In a supplemental filing, Witzke accused the Court of "abdicat[ing] its duty to make findings" concerning the sufficiency of the allegations in his Complaint. (Witzke Supp'l Notice, ECF No. 33, PageID.161.)  And he explained that he declined to file an amended Complaint because his factual allegations are not "legally insufficient." (*Id.*, PageID.159.)

The Court then ordered Trooper McLean to file a reply in support of his motion to dismiss. (*See* Order to Reply, ECF No. 34.)  Trooper McLean filed that reply on February 18, 2022. (*See* Reply, ECF No. 36.)

After reviewing the parties' briefing, the Court noted that the Sixth Circuit had recently issued two decisions, *Crafword v. Tilley*, 15 F.4th 752 (6th Cir. 2021) and *Kenjoh Outdoor, LLC v. Marchbanks*, 23 F.4th 686 (6th Cir. 2022), in which it clarified the language from *Wesley* on which Witzke had relied in his response to Trooper McLean's motion.  These more recent decisions (which are discussed in more detail below) made clear that there is no categorical bar against granting a

9

motion to dismiss based upon qualified immunity and that, under some circumstances, it may be entirely appropriate to do so. Both *Crawford* and *Kenjoh Outdoor* were decided after Witzke's response. For this reason and because Witzke is proceeding *pro se*, the Court issued an order on March 7, 2022, requiring Witzke to file a supplemental response to Trooper McLean's qualified immunity argument. (*See* Order for Supp'l Resp., ECF No. 37.) The point of that order was to give Witzke a full opportunity to present arguments on the merits of Trooper McLean's qualified immunity defense.

On April 25, 2022, Witzke filed a motion to strike Trooper McLean's qualified immunity defense. (*See* Mot. to Strike, ECF No. 46.) Then, on May 10, 2022, Witzke filed a supplemental response to Trooper McLean's motion to dismiss in response to the Court's Order. (*See* Supp'l Resp., ECF No. 49.) The Court ordered Trooper McLean to file a response to Witzke's motion to strike on May 11, 2022. (*See* Order to Respond, ECF No. 47.) Trooper McLean responded on May 26, 2022, (*see* Resp. to Mot. to Strike, ECF No. 50); Witzke replied on June 7, 2022. (*See* Mot. to Strike Reply, ECF No. 53.) The Court concludes that it may resolve the pending motions without oral argument. *See* E.D. Mich. Local Rule 7.1(f).

**II**

Three sets of procedural rules guide this Court's consideration of Witzke's claims and McLean's motion to dismiss.  They are as follows.

**A**

Trooper McLean has moved to dismiss Witzke's claims against him pursuant to Federal Rule of Civil Procedure 12(b)(6).  "To survive a motion to dismiss" under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570, (2007)).  A claim is facially plausible when a plaintiff pleads factual content that permits a court to reasonably infer that the defendant is liable for the alleged misconduct. *See id.*  When assessing the sufficiency of a plaintiff's claim, a district court must accept all of a complaint's factual allegations as true. *See Ziegler v. IBP Hog Mkt., Inc.*, 249 F.3d 509, 512 (6th Cir. 2001).  Mere "conclusions," however, "are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Iqbal*, 556 U.S. at 679.  A plaintiff must therefore provide "more than labels and conclusions," or "a formulaic recitation of the elements of a cause of action" to survive a motion to dismiss. *Twombly*, 550 U.S. at 555.  "Threadbare recitals of the

elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.

## B

Because Witzke is proceeding *pro se*, this Court must liberally construe his pleadings. *See Haines v. Kerner*, 404 U.S. 519, 520 (1972). But "the lenient treatment generally accorded to pro se litigants has limits." *Pilgrim v. Littlefield*, 92 F.3d 413, 416 (6th Cir. 1996). For instance, "the 'leniency standard' [generally afforded to *pro se* litigants] has still required basic pleading standards." *Martin v. Overton*, 391 F.3d 710, 714 (6th Cir. 2004) (quoting *Wells v. Brown*, 891 F.2d 591, 594 (6th Cir. 1989)). Moreover, "[l]iberal construction does not require a court to conjure allegations on a litigant's behalf." *Id.* (quoting *Erwin v. Edwards*, 22 F. App'x 579, 580 (6th Cir. 2001)).

And in construing a *pro se* litigant's pleadings, a court may account for the litigant's level of experience and familiarity with federal court practice and pleading standards. As the Second Circuit has explained, where a *pro se* litigant has been "extremely litigious" and "is quite familiar with the legal system and with pleading requirements," "the deference usually granted to *pro se* plaintiffs need not be expansively drawn." *Johnson v. Eggersdorf*, 8 F. App'x 140, 143 (2d Cir. 2001) (internal quotation marks omitted). *See also Holsey v. Bass*, 519 F. Supp. 395, 407 n.27 (D. Md. 1981) ("The experienced *pro se* litigator should be held to a higher

standard than the novice."); *In re Neilsen*, 443 B.R. 718, 720 (Bankr. W.D. Va. 2011) (observing that "courts in the Fourth Circuit have long held that *pro se* litigants be held to a sliding scale of liberality" based upon the litigant's experience level).[2] Thus, a *pro se* litigant's substantial experience may be considered as one factor that supports outright dismissal of an insufficiently-pleaded claim rather than granting him repeated opportunities to amend. *See Davidson v. Flynn*, 32 F.3d 27, 31 (2d Cir. 1994) (affirming dismissal of *pro se* plaintiff's claim without further leave to amend

---

[2] In related contexts, the Sixth Circuit has repeatedly considered a *pro se* litigant's experience level when evaluating the propriety of his pleadings and/or his entitlement to relief. *See, e.g., Flournoy v. Kelly*, 840 F.2d 16 (TABLE), 1998 WL 12137 (6th Cir., Feb. 18, 1988) (affirming imposition of Rule 11 sanctions on *pro se* plaintiff because, among other things, "[a]lthough the pleadings of [*pro se*] prisoners are held to a less stringent standard than the formal pleadings of counsel, *Westlake v. Lucas*, 537 F.2d 857 (6th Cir.1976), we are very aware that plaintiff is a frequent litigant in this Court and possesses substantial skills in presenting § 1983 claims for review."); *Woolum v. Seabold*, 902 F.2d 1570 (TABLE), 1990 WL 67887, at *2 (6th Cir., May 23, 1990) (affirming imposition of Rule 11 sanctions on *pro se* plaintiff because, among other things, he was "an experienced litigant" who had filed a frivolous claim); *Weatherspoon v. Thibault*, 2018 WL 7046896, at *2 (6th Cir., June 27, 2018) (affirming denial of *pro se* plaintiff's late-filed motion for jury trial because, among other things, plaintiff was "an experienced litigant" but nonetheless failed to demand a jury within the time-frame set forth in Rule 38(b)).

because, among other things, the plaintiff was "an extremely litigious inmate who is quite familiar with the legal system and with pleading requirements.").[3]

Here, the Court notes that: (1) as Witzke acknowledges, he is an experienced, prolific, and effective *pro se* federal court litigator (who has filed no less than two dozen civil actions in this Court);[4] and (2) Witzke's pleadings in this Court

---

[3] *See also Burley v. Abdellatif*, 2018 WL 3300315, at *5 (E.D. Mich. Jan. 26, 2018) (report and recommendation) ("Further, Burley is not just any *pro se* litigant, but has frequently litigated in the Eastern and Western Districts of Michigan, and thus is more familiar with such basic federal court pleading requirements than other *pro se* prisoners might be. The Court will therefore not countenance Burley's failure to follow the Federal Rules' pleading requirements by permitting him to further amend his complaint[.]") *report and recommendation adopted,* 2018 WL 1384235 (E.D. Mich. Mar. 19, 2018); *Sango v. Johnson*, 2014 WL 8186701, at *8 (E.D. Mich. Oct. 29, 2014) (report and recommendation) (explaining that plaintiff "is not just any *pro se* litigant, but has frequently litigated in the Eastern and Western Districts, and thus is more familiar with such basic federal court pleading requirements than other *pro se* prisoners might be" and recommending dismissal of complaint without further leave to amend), *report and recommendation adopted,* 2015 WL 1245969 (E.D. Mich. Mar. 18, 2015).

[4] In a prior hearing on a separate case before this Court, the Court observed that Witzke was "a very intelligent litigant" and "a very well-informed litigant." *See Witzke v. Bouchard*, E.D. Mich. Case No. 21-10319, 4/6/2021 Hr'g Tr., ECF No. 27, PageID.358. In response, Witzke said, among other things: "I know it." *Id.* Later in the same hearing, Witzke boasted that through his legal work, he had "gotten a lot of people out of prison. I've gotten a lot of people. Even with Eastern District judges, older judges that are no longer on the bench. I've done a lot of things, all right?" *Id.*, PageID.377.

consistently reflect an unusually-high level of sophistication.[5]   The Court will thus consider Witzke's experience and knowledge of federal court practice, at least to some degree, when evaluating his claims and determining whether to grant leave to amend.

## C

Finally, Trooper McLean's motion to dismiss rests, in part, on the doctrine of qualified immunity.  Qualified immunity "shields 'government officials performing discretionary functions' from civil liability 'insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Hudson v. Hudson*, 475 F.3d 741, 744 (6th Cir. 2007) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).   "This immunity 'gives government officials breathing room to make reasonable but mistaken judgments about open legal questions,' 'protect[ing] all but the plainly incompetent or those who knowingly violate the law.'" *Jacobs v. Alam*, 915 F.3d 1028, 1039 (6th Cir.

---

[5] Prior legal briefs filed by Witzke reveal that he has familiarity with, and the ability to apply, Rules 59 and 60 of the Federal Rules of Civil Procedure as well as his comfort in seeking injunctive relief. *See, e.g., Cameron et al. v. Bouchard et al.*, E.D. Mich. Case No. 20-10949, Witzke's Rule 60(b)(6) Mot. for Relief from Judgment and Supporting Brief, ECF No. 195; *Witzke v. Stieber et al.*, E.D. Mich. Case No. 07-10085, Witzke's Mot. for Temporary Restraining Order or Preliminary Injunction, ECF No. 3; *Witzke v. Brewer*, No. E.D. Mich. Case 15-12429, Witzke's Rule 59(e) Mot. to Alter or Amend Judgment and for Reconsideration and Supporting Brief, ECF No. 20.

2019) (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 743 (2011)).  Once a defendant raises a qualified immunity defense, the "plaintiff bears the burden of showing that [the] defendant is not entitled to qualified immunity." *Id.*

"A qualified-immunity inquiry involves two questions: whether defendants violated a constitutional right and whether that right was clearly established." *Brown v. Chapman*, 814 F.3d 447, 457 (6th Cir. 2016).  "These questions may be answered in any order; if either one is answered in the negative, then qualified immunity protects the official from civil damages." *Id.*

When determining whether an individual's rights are clearly established for purposes of qualified immunity, "[t]he sources of clearly established law to be considered are limited. [Courts in this Circuit] look first to decisions of the Supreme Court, then to decisions of [the Sixth Circuit] and other courts within [the Sixth] [C]ircuit, and finally to decisions of other circuits." *Martin v. City of Broadview Heights*, 712 F.3d 951, 961 (6th Cir. 2013).  Courts "must not 'define clearly established law at a high level of generality, since doing so avoids the crucial question whether the official acted reasonably in the particular circumstances that he or she faced.'" *District of Columbia v. Wesby*, 138 S. Ct. 577, 590 (2018) (quoting *Plumhoff v. Rickard*, 134 S. Ct. 2012, 2023 (2014)).  Indeed, a court's task "requires a high 'degree of specificity.'" *Id.* (quoting *Mullenix v. Luna*, 577 U.S. 7, 13 (2015)).

This specificity "is 'especially important in the Fourth Amendment context.'" *Id.* (quoting *Mullenix*, 577 U.S. at 12).  It is why the Supreme Court has "stressed the need to 'identify a case where an officer acting under similar circumstances ... was held to have violated the Fourth Amendment.'" *Id.* (quoting *White v. Pauly*, 137 S. Ct. 548, 552 (2017)).  And "[w]hile there does not have to be 'a case directly on point,' existing precedent must place the lawfulness of the particular arrest 'beyond debate.'" *Id.* (quoting *Al-Kidd*, 563 U.S. at 741).  Thus, as the Sixth Circuit has explained, a "defendant cannot be said to have violated a clearly established right unless the right's contours were sufficiently definite that any reasonable official in the defendant's shoes would have understood that he was violating it. In other words, existing precedent must have placed the statutory or constitutional question confronted by the official beyond debate.'" *Wenk v. O'Reilly*, 783 F.3d 585, 598 (6th Cir. 2015) (quoting *Plumhoff*, 134 S. Ct. at 2023).

### III

The Court begins with Witzke's Fourth Amendment Claim.  That claim seems to encompass two theories of Trooper McLean's liability. (*See* Compl. at ¶¶ 14–15, 30, ECF No. 1, PageID.4, 9.)  Witzke's first theory is that Trooper McLean, as the officer who first arrested Witzke without a warrant, is liable for the failure to bring Witzke before a judicial officer within 48 hours, as required by *County of Riverside v. McLaughlin*, 500 U.S. 44 (1991) (the "*Riverside* Theory").  Witzke's second

theory appears to be that Trooper McLean, after validly arresting Witzke, violated Witzke's Fourth Amendment rights by releasing him to the Madison Heights PD Defendants even though those Defendants did not have probable cause to believe that Witzke had committed a crime in Madison Heights and/or committed a new offense after his initial arrest (the "Release Theory").

Trooper McLean has asserted that he is entitled to qualified immunity on Witzke's Fourth Amendment Claim. (*See* Resp., ECF No. 17, PageID.88–93.) Witzke counters that (1) Trooper McLean is not entitled to assert qualified immunity because his conduct here was ministerial, and not discretionary; and (2) in any event, Trooper McLean is not entitled to qualified immunity because he violated Witzke's clearly established Fourth Amendment rights.  As explained below, the Court does not find either of Witzke's counterarguments persuasive and concludes instead that Trooper McLean is entitled to qualified immunity.

**A**

As a threshold matter, the Court must address Witzke's argument – raised in his motion to strike – that qualified immunity is not available to Trooper McLean because Trooper McLean was performing a ministerial function at the times relevant to Witzke's Fourth Amendment claim. (*See* Mot. to Strike, ECF No. 46.)  The Court disagrees.

As Witzke correctly notes, while state actors have qualified immunity for discretionary functions, they do not enjoy that same immunity for their performance of "'ministerial' functions." *Hudson v. Hudson*, 475 F.3d 741, 744 (6th Cir. 2007). But the "class of circumstances in which [state actors] perform 'ministerial' functions" is "narrow." *Id.* A function is "ministerial" only "where the relevant law 'specif[ies] the precise action that the official must take in each instance,' thereby eliminating discretion." *Id.* (quoting *Davis v. Scherer*, 468 U.S. 183, 196 n.14 (1984)). In contrast, a function is discretionary if it "involve[s] significant decision-making that entails personal deliberation, decision and judgment." *Davis v. Holly*, 835 F.2d 1175, 1178 (6th Cir. 1987).

According to Witzke, Trooper McLean's actions here were ministerial rather than discretionary because Michigan law required Trooper McLean to bring Witzke – as an individual Trooper McLean arrested without a warrant – before a court for a probable cause determination. In support of this argument, Witzke relies upon Mich. Comp. Laws § 764.13. That statute provides that "[a] peace officer who has arrested a person for an offense without a warrant shall without unnecessary delay take the person arrested before a magistrate of the judicial district in which the offense is charged to have been committed, and shall present to the magistrate a complaint stating the charge against the person arrested." *Id.* Despite the apparently mandatory language of the statute, it does not require an officer to bring before a judicial officer

19

every person whom the officer has arrested and temporarily detained.  Instead, the statute allows "an arrested person [to be] 'booked' and questioned for such time of 'brief delay' as presented circumstances fairly require in order to determine the immediate question of *release or complaint*." *People v. Hamilton*, 102 N.W.2d 738, 742 (Mich. 1960) (emphasis added) (quotation marks omitted).  Simply put, the statute gives an officer the freedom to decide – without unnecessary delay – between seeking charges and releasing a defendant who has been arrested and detained. Indeed, Witzke acknowledges that the statute gives an arresting officer these "two options." (Mot. to Strike, ECF No. 46, PageID.371.)

Choosing between "release or complaint" under Mich. Comp. Laws § 764.13, *Hamilton*, 102 N.W.2d at 742, is the very the type of discretionary decision making that the qualified immunity doctrine is designed to protect.  In making that decision, an officer must weigh a number of factors, including, for example, the strength of the evidence against the arrestee, the danger posed by the arrestee if released, and any new information revealed (by the arrestee or otherwise) after the arrest bearing upon this decision.  Evaluating these (and other) factors and then deciding whether to release an arrestee or seek charges obviously "entails deliberation, decision and judgment." *Davis*, 835 F.2d at 1178.  And because Mich. Comp. Laws § 764.13 allows an officer to make a choice based upon his judgment, it "does not specif[y] the precise action that the official must take in each instance." *Hudson*, 475 F.3d at

744.  Thus, for purposes of qualified immunity, actions taken by officers pursuant to Mich. Comp. Laws § 764.13 are discretionary rather than ministerial. *See Hudson*, 475 F.3d at 744 (holding that because a "seemingly mandatory statute[]" concerning the arrest of a person suspected of violating a personal protection order actually permitted an arresting officer to exercise discretion, an arrest pursuant to the statute was a discretionary function rather than a ministerial one).

At most, Witzke's allegations suggest that Trooper McLean abused the discretion afforded to him under the statute when he allegedly decided to "release" Witzke to the custody of the Madison Heights PD Defendants instead of bringing Witzke before a judge. (Compl. at ¶ 15, ECF No. 1, PageID.4.)   But Trooper McLean's alleged abuse of his discretion did not somehow convert the function he performed into a ministerial one.  On the contrary, a discretionary function "remains so however egregiously it is abused." *Hudson*, 475 F.3d at 744 (internal quotation omitted).  For all of these reasons, the Court concludes that, for purposes of qualified immunity, the functions Trooper McLean performed after arresting Witzke were discretionary rather than ministerial.

Witzke counters by citing a Michigan Supreme Court decision which states that "[a] police officer […] conducts many ministerial acts each day, such as […] following procedures for booking an arrested person." (Mot. to Strike, ECF No. 46, PageID.374 (quoting *Odom v. Wayne Co.*, 760 N.W.2d 217, 226 (Mich. 2008)).)  He

claims that *Odom* compels the conclusion that Trooper McLean was performing a ministerial function here.   Witzke's reliance on the above-quoted statement from *Odom* is misplaced.   Witzke's claims against McLean do not rest upon any allegation that McLean deviated from specified procedures while booking Witzke.   Instead, Witzke's claims arise out of decisions that McLean allegedly made concerning Witzke's custody status.   *Odom* does not speak to such decisions.[6]

Witzke also directs the Court to the Sixth Circuit's decision in *Drogosch v. Metcalf*, 557 F.3d 372 (6th Cir. 2009). (*See id.*, PageID.370.)   In *Drogosch*, the Sixth Circuit rejected an arresting officer's qualified immunity defense to a claim that he had failed to promptly bring an arrestee before a judicial officer.   In explaining its decision, the court said that under Mich. Comp. Laws § 764.13, an arresting officer "b[ears] responsibility" for bringing "before a magistrate" a person whom he has arrested without a warrant. *Id.* at 379.   Witzke says that this statement confirms that Trooper McLean's functions here as the arresting officer were ministerial and that McLean thus may not assert a qualified immunity defense.   But *Drogosch* actually undercuts that argument.   The Sixth Circuit in *Drogosch* reached the merits of the arresting officer's qualified immunity defense.   It could not have – and would not have – done so if the arresting officer's conduct was ministerial.   Thus, *Drogosch*

---

[6] Moreover (and in any event), the one sentence in *Odom* about booking procedures is *dicta*.   The case did not involve a claim arising out of a booking.

does not support Witzke's argument that Trooper McLean may not assert a qualified immunity defense because his conduct was ministerial.

For all of these reasons, the Court concludes that Trooper McLean was not performing a ministerial function and that he may therefore assert qualified immunity as a defense to Witzke's claims.   Accordingly, the Court **DENIES** Witzke's motion to strike Trooper McLean's qualified immunity defense (ECF No. 46) and proceeds to consider the merits of Trooper McLean's qualified immunity defense.[7]

## B

The Court begins and ends its qualified immunity analysis with the "clearly established" prong of the qualified immunity inquiry, as that prong is dispositive here.   In order to satisfy his burden on this prong, Witzke had "to 'identify a case where an officer acting under similar circumstances" as Trooper McLean allegedly acted "was held to have violated the Fourth Amendment.'" *Wesby*, 138 S. Ct. at 590 (2018) (quoting *White*, 137 S. Ct. at 552 (2017)).   As explained below, Witzke has not satisfied that burden with respect to either of his Fourth Amendment theories.

---

[7] Because the Court is denying Witzke's motion to strike on its merits, the Court need not and does not reach Trooper McLean's argument as to the timeliness of Witzke's motion.

**1**

The Court starts with Witzke's *Riverside* Theory. As noted above, under this theory, Witzke posits that Trooper McLean, as the officer who first arrested him without a warrant, violated his Fourth Amendment rights by failing to bring him before a magistrate for a probable cause determination within 48 hours.

There is no doubt, as Witzke contends, that under *County of Riverside*, Witzke had a clearly established Fourth Amendment right while in custody to be brought before a magistrate within 48 hours. However, the question raised by Trooper McLean's qualified immunity defense is: did Witzke have a clearly Fourth Amendment right to be brought before a magistrate *by Trooper McLean*? Or, stated another way: was it clearly established that *Trooper McLean was obligated* to bring Witzke before a judicial officer within 48 hours? Witzke says "yes." And he directs the Court to three cases: *County of Riverside*, *supra*; *Cherrington v. Skeeter*, 344 F.3d 631 (6th Cir. 2003); and *Drogosch*, 557 F.3d 372. (*See* Mot. to Strike Reply, ECF No. 53, PageID.509.)[8] But none of those cases clearly establish that Witzke had a right to be brought before a magistrate within 48 hours *by Trooper McLean*.

---

[8] Witzke also cites *Lester v. Roberts*, 986 F.3d 599 (6th Cir. 2021) for support. That decision post-dates the relevant conduct here and thus could not have clearly established the law for purposes of Trooper McLean's qualified immunity assertion. In any event, it is factually inapposite.

Start with *County of Riverside*.  That case involved a Section 1983 class action for injunctive and declaratory relief regarding a county's procedures for complying with the requirement, under *Gerstein v. Pugh*, 420 U.S. 103 (1975), of "a prompt judicial determination of probable cause as a prerequisite to an extended pretrial detention following a warrantless arrest." *County of Riverside*, 500 U.S. at 47.  The United States Supreme Court held that "prompt" meant that a county must generally provide such a determination within 48 hours. *Id.* at 56.  The decision does not speak to an individual officer's obligation to bring an arrestee before a judicial officer. Indeed, it says nothing about whether an arresting officer must personally present an arrestee to a judicial officer within 48 hours.  Thus, *County of Riverside* does not clearly establish that the Fourth Amendment obligated Trooper McLean to bring Witzke before a magistrate within 48 hours of arresting him.

The Sixth Circuit's decision in *Cherrington* likewise falls short in that regard. The procedural posture of *Cherrington* was somewhat unusual.  The plaintiff and her daughter were arrested without a warrant, held in a motel for 24 hours, and then driven to a police department jail, where plaintiff was held for an additional 48 hours. *See Cherrington*, 344 F.3d at 634–35, 642–43.  She brought a Section 1983 claim against the arresting officers and the municipality that employed them.  In the district court, she argued that they violated her right to a prompt judicial hearing under Ohio Rule of Criminal Procedure 4(E)(2). *See id.* at 642.  The district court dismissed the

claim on the ground that "a violation of a state rule of criminal procedure cannot sustain a federal § 1983 claim." *Id*.  The Sixth Circuit reversed.  It agreed with the district court that the plaintiff could not rest her Section 1983 claim on the violation of a state rule, but it concluded that plaintiff did have a viable claim for violation of her right to a prompt probable cause determination under *County of Riverside*.

However (and critically, here), the Sixth Circuit did not make any determination as to whether *the arresting officer* could be held personally liable for the *County of Riverside* violation.  On the contrary, the court said that it was not possible to do so given the state of the record. *See id.* at 644–45.  In the end, the court made "only a few general observations [concerning the officer's liability] that the District Court might wish to consider in any subsequent proceedings." *Id.*  Thus, *Cherrington* did not clearly establish the law regarding an arresting officer's liability under *County of Riverside*.  Moreover, *Cherrington* is distinguishable on its facts.  Unlike in this case, the arresting officer in *Cherrington* did not "release" the arrestee to officers from a different department within *County of Riverside*'s 48-hour window.  For all of these reasons, *Cherrington* does not support Witzke's contention that Trooper McLean violated his clearly established Fourth Amendment rights.

26

Finally, the Court turns to *Drogosch*.  The plaintiff in *Drogosch* was a probationer.  He was arrested without a warrant by a parole officer who was part of a task force conducting spot checks on probationers and parolees.  At the time of the arrest, the parole officer "did not have the proper type of paperwork with him to place [the plaintiff] in the custody of the Wayne County Jail as a probation violator." *Drogosch*, 557 F.3d at 374.  So, the parole officer "decided to lodge [the plaintiff] in the jail using a type of form that identified him as a *parole* violator—a class of prisoners that [the parole officer] knew would not be entitled to a prompt probable-cause hearing before a judge." *Id*. (Emphasis in original.)  Because the parole officer knowingly used the wrong form, the plaintiff "lingered in jail for 13 days before being released." *Id.*

The plaintiff later sued and alleged (among other things) that the parole officer was liable for a *County of Riverside* violation. *See id.* at 378.  In response, the officer asserted qualified immunity.  The parole officer argued primarily that he could not be liable for the *County of Riverside* violation because it was *other* law enforcement officers who failed to bring the plaintiff before a judge after he (the parole officer) lodged the plaintiff in jail. *See id.*  The Sixth Circuit described this argument as: "someone screwed up, but it wasn't [the parole officer]." *Id.*  And the court rejected the argument. *See id.*  Looking to Michigan state law, the Sixth Circuit held that the parole officer, as the arresting officer, bore the responsibility to take the plaintiff

before a magistrate. The Sixth Circuit further stressed that the parole officer could be held liable because his actions "ensured that [plaintiff] would essentially be lost in the system." *Id.* at 379. The Sixth Circuit concluded that under those circumstances, the parole officer violated the plaintiff's clearly established rights under *County of Riverside*. *See id.*

Witzke's reliance on *Drogosch* is understandable. Trooper McLean's defense here may well be, at least to some extent, that if there was a *County of Riverside* violation, it was committed by the Madison Heights PD Defendants, not by him. And that resembles the "someone screwed up, but it wasn't me" defense rejected by the Sixth Circuit in *Drogosch*. *Id.* at 378. *Drogosch* therefore does seem to lend some support to Witzke's claim that Trooper McLean violated Witzke's Fourth Amendment rights by arresting Witzke without a warrant and then failing to bring Witzke before a judicial officer within 48 hours.

But *Drogosch* does not *clearly establish* that Trooper McLean's alleged conduct violated the Fourth Amendment because the facts of *Drogosch* are so fundamentally different from those that Witzke alleges here. As explained above, *Drogosch* involved (1) a single arrest, (2) by an officer, who (3) personally lodged the plaintiff in the jail, and (4) personally completed the paperwork that caused the arrestee to be classified in a way that resulted in the *County of Riverside* violation. Here, in sharp contrast, Witzke alleges that he was subject to two *separate* arrests;

that Trooper McLean made the first arrest and then released him from MSP custody before any *County of Riverside* violation occurred; and that it was the second arrest by the Madison Heights PD Defendants and the corresponding detention at the Madison Heights Police Station that pushed his detention past the 48-hour mark. Given these fundamental factual differences between *Drogosch*, on one hand and Witzke's allegations against Trooper McLean, on the other, the Court cannot read *Drogosch* as clearly establishing that Trooper McLean violated Witzke's right to a hearing within 48 hours under *County of Riverside*. *See Roberson v. Wynkoop*, 2021 WL 5190902, at *2 (6th Cir. Nov. 9, 2021) (explaining that *Drogosch* does "not clearly establish" the liability of officers whose alleged conduct caused the prolonged detention of an arrestee under "particularized circumstances" that differ from those in *Drogosch* and reversing denial of qualified immunity on *County of Riverside* claim against an officer who arrested suspect, requested a warrant, and booked suspect into a jail where he was held for more than 48 hours).[9]  For these reasons, the Court concludes that *Drogosch* does not clearly establish that Trooper McLean personally violated Witzke's Fourth Amendment rights.

---

[9] *See also Rayfield v. City of Grand Rapids*, 768 F. App'x 495 (6th Cir. 2019) (holding arresting officers were entitled to qualified immunity from *County of Riverside* claim where officers arrested plaintiff and then transferred plaintiff from their (city) custody to county custody and plaintiff was then held in county custody for over 48 hours).

In sum, Witzke has not cited any controlling authority that clearly establishes that Trooper McLean's alleged conduct constituted a Fourth Amendment violation under *County of Riverside*.   Trooper McLean is therefore entitled to qualified immunity on Witzke's *Riverside* Claim.

## 2

Witzke's Release Theory fails for much the same reasons.   The Release Theory posits that Trooper McLean violated the Fourth Amendment when, after he had validly arrested Witzke without a warrant, he released Witzke to the custody of the Madison Heights PD Defendants even though those Defendants did not have an independent basis of probable cause to detain Witzke.   Yet, Witzke does not cite a single case in which any court has held that once an officer validly arrests a suspect, the officer may release the suspect to the custody of another law enforcement agency if and only if the second agency has independent probable cause to arrest and detain the suspect. For this simple reason, Witzke has also failed to meet his burden on the clearly established prong for the Release Theory.

## 3

Witzke contends that the Court should not decide the issue of qualified immunity on a motion to dismiss under Rule 12(b)(6).  As noted above, he relies on the Sixth Circuit's opinion in *Wesley*, 779 F.3d at 433–34, for the proposition that

"it is generally inappropriate for a district court to grant a 12(b)(6) motion to dismiss on the basis of qualified immunity."

Witzke's reliance on *Wesley* is mistaken. As the Court noted above, the Sixth Circuit recently explained that the passage from *Wesley* quoted by Witzke "is at best imprecise." *Crawford v. Tilley*, 15 F.4th 752, 763 (6th Cir. 2021). The reluctance to decide qualified immunity issues at the motion to dismiss stage, as embodied by the quoted passed in *Wesley*, "only has bite when the 'clearly established' inquiry turns on 'case-specific details that must be fleshed out in discovery.'" *Kenjoh Outdoors*, 23 F.4th at 695 (quoting *Crawford*, 15 F.4th at 763). On the other hand, the Sixth Circuit has underscored that "a complaint distinguishable from [the Sixth Circuit's] past cases on its face will not often survive a motion to dismiss on qualified immunity grounds." *Crawford*, 15 F.4th at 752; *see also Kenjoh Outdoor,* 23 F.4th at 695 ("[I]f the complaint is 'distinguishable from our past cases on its face,' it will not survive a motion to dismiss.") (quoting *Crawford*, 15 F.4th at 765). "This is especially true" in cases where it is "apparent from the complaint that the law was not clearly established because 'not a single judicial opinion' had held the [defendant's] action unconstitutional." *Crawford*, 15 F.4th at 765 (quoting *Ashcroft*, 563 U.S. at 741). Because Witzke has not identified "a single judicial opinion" holding Trooper McLean's alleged conduct was unconstitutional, the Court properly

31

resolves Trooper McLean's qualified immunity defense against Witzke at the motion to dismiss stage.

Witzke counters still that *Crawford* and *Kenjoh Outdoor* are not binding on this Court because those decisions improperly purport to overrule *Wesley*. (*See* Supp'l Resp., ECF No. 49, PageID.397–399.)   Witzke explains that later-issued decisions of three-judge panels of the Sixth Circuit, like *Crawford* and *Kenjoh Outdoor*, cannot and do not overrule earlier-decided ones, like *Wesley*.

On this point, Witzke is right on the law and wrong on its application to his case. *Crawford* and *Kenjoh Outdoor* do not purport to, and do not in fact, overrule *Wesley*.   By its own terms, *Wesley* does not establish a *per se* rule barring consideration of qualified immunity at the motion to dismiss stage.   Thus, *Crawford* and *Kenjoh Outdoor*'s elaboration on the circumstances in which granting a motion to dismiss on qualified immunity grounds is warranted does not contradict any holding of *Wesley*.   On the contrary, *Crawford* and *Kenjoh Outdoor* merely clarified some of the language from *Wesley*, and those clarifications are both appropriate and binding on this Court.

Accordingly, the Court is satisfied that it is appropriate to address Trooper McLean's qualified immunity defense at this stage.

**C**

For all the reasons explained above, the Court concludes that Witzke has failed to demonstrate that Trooper McLean is not entitled to qualified immunity on Witzke's Fourth Amendment Claim.  That claim is therefore **DISMISSED WITH PREJUDICE**.

**IV**

Having dismissed Witzke's only federal claim against Trooper McLean, the Court is confronted next with Witzke's False Imprisonment Claim against Trooper McLean under Michigan common law. (*See* Compl., ECF No. 1, PageID.10.)  The Court has supplemental jurisdiction over that claim under 28 U.S.C. § 1367.  That statute provides that "in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a).  The statute further authorizes a district court to "decline to exercise supplemental jurisdiction over a claim" where "the claim raises a novel or complex issue of State law." 28 U.S.C. § 1367(c)(1).  Thus, supplemental jurisdiction "is a doctrine of discretion, not of [ ] right." *Habich v. City of Dearborn*, 331 F.3d 524, 535 (6th Cir. 2003) (internal quotation marks omitted) (affirming district court's refusal to assert supplemental jurisdiction).  Indeed, district courts

have "broad discretion in deciding whether to exercise supplemental jurisdiction over state law claims." *Pinney Dock & Transport Co. v. Penn Cent. Corp.*, 196 F.3d 617, 620 (6th Cir. 1999).

Here, the Court exercises its "broad discretion" and declines to exercise supplemental jurisdiction over Witzke's False Imprisonment Claim. The resolution of that claim appears to turn on potentially complex and unsettled issues of Michigan law. Most importantly, it is not at all clear whether Trooper McLean's alleged conduct here – making a valid arrest and then releasing the arrestee to another law enforcement agency that lacks its own probable cause – rises to the level of a false arrest or false imprisonment under Michigan law. And in the briefing to date, neither party has cited a decision applying Michigan law to conduct that even remotely resembles Trooper McLean's alleged conduct here.

Because Witzke's False Imprisonment Claim against Trooper McLean presents a novel and potentially difficult question of Michigan law, the Court exercises its discretion under 28 U.S.C. § 1367 to decline to exercise supplemental jurisdiction over that claim. That claim is most appropriately decided by a Michigan state court. This Court therefore **DISMISSES** Witzke's False Imprisonment against Trooper McLean **WITHOUT PREJUDICE**.

**V**

Finally, although Witzke has not yet asked for leave to amend his Complaint, the Court wishes to make clear that it will not permit Witzke to amend his claims against Trooper McLean.  The Court already offered Witzke the opportunity to amend his Complaint in response to Trooper McLean's motion to dismiss (*see* Order Granting Leave to Amend, ECF No. 28), and he declined.  While Rule 15(a) of the Federal Rules of Civil Procedure embodies a liberal policy in favor of granting amendments, it does not require the Court to allow Witzke – having rejected the Court's offer to permit an amendment – to amend now that the Court has reviewed and decided the issues raised in McLean's motion to dismiss.  Instead, Rule 15(a) demands that "where a more carefully drafted complaint might state a claim, a plaintiff must be given at least one chance to amend the complaint before the district court dismisses the action with prejudice." *U.S. ex rel. Bledsoe v. Cmty. Health Sys., Inc.*, 342 F.3d 634, 644 (6th Cir. 2003).  In full compliance with that rule, the Court gave Witzke a chance to amend before entering the current dismissal.

In rejecting the opportunity to amend his Complaint, Witzke complained about the timing of the Court's offer to amend.  He said that the Court was wrong to offer him the chance to amend before the Court had reviewed the sufficiency of his allegations.  But Witzke ignores that he was "not entitled to an advisory opinion from the Court informing [him] of the deficiencies of [his] complaint and then an

35

opportunity to cure those deficiencies." *Begala v. PNC Bank, Ohio, Nat. Ass'n*, 214 F.3d 776, 784 (6th Cir. 2000) (quoting and affirming district court order denying leave to amend complaint)).  Moreover, "[w]here parties have fully argued the merits of a 12(b)(6) motion to dismiss and the district court has duly considered those arguments and issued an opinion resolving the motion, it is a stretch to say justice requires granting leave to cure the complaint's deficiencies as identified in adversarial pleadings and the district court's order." *United States ex rel. Ibanez v. Bristol-Myers Squibb Co.*, 874 F.3d 905, 918 n. 2 (6th Cir. 2017). *See also Wysong Corp. v. APN, Inc.*, 889 F.3d 267, 273 (6th Cir. 2018) (same; quoting *Ibanez, supra*).

The Court's procedure here – offering Witzke the chance to amend before proceeding to decide Trooper McLean's motion to dismiss and then declining to permit an amendment after ruling on the motion – strikes the proper balance between Rule 15(a)'s liberal policy in favor of amendments, on one hand, and judicial efficiency on the other.  The procedure afforded Witzke a full and fair opportunity to address and remedy the alleged deficiencies identified by Trooper McLean in his motion to dismiss.  And the procedure permitted the Court to avoid multiple rounds of motions to dismiss.

Furthermore, granting Witzke leave to amend at this stage of litigation would undermine the goal of judicial economy.  Since the time that Witzke declined to amend his Complaint, this Court has issued three orders requiring additional briefing

from Witzke and/or McLean relating to the present motions (*see* Order to Reply, ECF No. 34; Order for Supplemental Response, ECF No. 37; Order to Respond, ECF No. 47), the parties thereafter filed that additional briefing, and the Court reviewed that briefing (and the original round of briefing).  Put simply, after Witzke chose to stand pat on his original Complaint, the Court and the parties dedicated substantial time and resources to addressing and resolving the claims in that pleading.  There is nothing unfair or improper about denying leave to amend – to a party who previously declined an invitation to amend – under these circumstances. In fact, the Sixth Circuit has affirmed the denial of leave to amend under analogous circumstances. *See Wysong,* 889 F.3d at 273 (affirming denial of leave to amend where, among other things, the district court had given the plaintiffs an opportunity to cure the deficiencies identified by the defendants prior to ruling on defendants' motion to dismiss and had issued a decision granting a motion to dismiss).  Finally, the Court notes that denial of leave to amend and dismissal of Witzke's claims here is especially appropriate given Witzke's substantial level of federal litigation experience and his familiarity with federal pleading standards.

## VI

For all the reasons explained above, Trooper McLean's motion to dismiss (ECF No. 17) is **GRANTED IN PART** and Witzke's Fourth Amendment claim against Trooper McLean is **DISMISSED WITH PREJUDICE** and without leave

to amend.   Witzke's False Imprisonment Claim against Trooper McLean is

**DISMISSED WITHOUT PREJUDICE**.

Because the Court is dismissing Witzke's claims against Trooper McLean, the

Court concludes that he is not entitled to discovery on those claims.   Accordingly,

his motion requesting discovery – set forth in his supplemental response (ECF No.

49) – is **DENIED**.

**IT IS SO ORDERED.**

s/Matthew F. Leitman
MATTHEW F. LEITMAN
Dated:  July 7, 2022         UNITED STATES DISTRICT JUDGE


I hereby certify that a copy of the foregoing document was served upon the
parties and/or counsel of record on July 7, 2022, by electronic means and/or ordinary
mail.

s/Holly A. Ryan
Case Manager
(313) 234-5126