UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

SCOTT A. WITZKE,

               Plaintiff                    Case No. 2:16-cv-13753

                                        District Judge Arthur J. Tarnow

v.                                   Magistrate Judge Anthony P. Patti

RUSS MARLAN,
ALEX J. SMITH, and
EBONY M. PULLINS-GOVANTES,

               Defendants.

_____/

**REPORT AND RECOMMENDATION TO GRANT PLAINTIFF'S MARCH
15, 2018 MOTION FOR PARTIAL SUMMARY JUDGMENT AS TO
DEFENDANT PULLINS-GOVANTES (DE 60) AND DENY DEFENDANT
PULLINS-GOVANTES'S Fed. R. Civ P. 56(f) REQUEST FOR SUMMARY
JUDGMENT (DE 67 at 6, 14)**

**I.**    **RECOMMENDATION**:  The Court should **GRANT** Plaintiff's March 15,

2018 motion for partial summary judgment as to Defendant Pullins-Govantes (DE

60) and **DENY** Defendant Pullins-Govantes's April 12, 2018 Fed. R. Civ. P. 56(f)

request for summary judgment (DE 67 at 6, 14).

**II.**    **REPORT**

    **A.**    **Introduction**

      Plaintiff Scott Andrew Witzke filed this lawsuit, *in pro per*, on October 21,

2016, at which time he was "a parolee under the jurisdiction of the Michigan

Department of Corrections . . . ."  (DE 1 at 2 ¶ 3.)  On November 14, 2017,

Plaintiff filed an amended/supplemental complaint with jury demand, in which he names as Defendants Russ Marlan, Alex J. Smith, and Ebony M. Pullins-Govantes. (DE 47 ¶¶ 4-6.) The facts underlying Plaintiff's complaint span the period from May 26, 2016, when Plaintiff was "enlarged on parole status," to September 6, 2017, when Plaintiff was "released from DRC [Detroit Re-entry Center] on parole status." (DE 47 ¶¶ 8-40.) Plaintiff's causes of action are based upon the Due Process Clause of the Fourteenth Amendment and false arrest / false imprisonment. (DE 47 ¶¶ 39-42.) Plaintiff seeks various forms of declaratory, injunctive, compensatory and punitive relief. (DE 47 at 13-15 ¶¶ A-J.)

### B. Prior Dispositive Motion Practice

Judge Tarnow referred this case to me for all pretrial proceedings. The initial scheduling order provided an October 2, 2017 deadline by which Defendants Marlan and Smith were to "file any Fed. R. Civ. P. 12 motion, any motion alleging failure to exhaust under 42 U.S.C. § 1997e, or any motion alleging entitlement to immunity . . . ." (DE 27.) Plaintiff sought preliminary injunctive relief. (DEs 31, 38.) However, on February 12, 2018, he was discharged from the MDOC's jurisdiction. (*See* www.michigan.gov/corrections, "Offender Search; *see also* DE 57-2, DE 67-2 ¶ 12.) The following day, Plaintiff filed a motion to withdraw his injunctive relief claims on mootness grounds. (DE 57.)

On March 19, 2018, I entered a report recommending, in part, that the Court
**(a)** grant Plaintiff's February 13, 2018 motion to withdraw his injunctive relief
claims on mootness grounds (DE 57); and, **(b)** accordingly, deem withdrawn his
October 3, 2017 motion for preliminary injunction (DE 31), his November 4, 2017
amended motion for preliminary injunction (DE 38), and his requests for injunctive
relief within his November 14, 2017 amended/supplemental complaint (*see*, *e.g.*,
DE 47 at 14 ¶¶ C, D). (DE 62.) On April 12, 2018, the Court adopted my report
and recommendation. (DE 68.)

### C. Pending Dispositive Motion

On July 12, 2018, Judge Tarnow entered a stipulated order of partial
dismissal by which Plaintiff's claims against Defendants Marlan and Smith were
dismissed in their entirety. (DE 72.) Therefore, the only remaining Defendant is
Pullins-Govantes, who Plaintiff describes as an MDOC "Parole Violation
Specialist," who "imposed sanctions upon alleged parole violators, including
having imposed sanctions upon Plaintiff Witzke." (DE 47 ¶ 6.) I will refer to the
response to the instant motion — initially filed on behalf of all the defendants — as
coming from her alone.

Currently before the Court is Plaintiff's March 15, 2018 motion for partial
summary judgment as to Defendant Pullins-Govantes (DE 60), which is
accompanied by a verifying declaration (DE 61). Defendant has filed a response,

in which she asks the Court not only to deny Plaintiff's motion but also to grant summary judgment in *her* favor, presumably under Fed. R. Civ. P 56(f). (DE 67 at 6, 14.) Plaintiff has filed a reply. (DE 69.)

### D.     Fed. Rules Civ. P. 56(a), 56(f)

Under Federal Rule of Civil Procedure 56, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). A fact is material if it might affect the outcome of the case under governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). The Court "views the evidence, all facts, and any inferences that may be drawn from the facts in the light most favorable to the nonmoving party." *Pure Tech Sys., Inc. v. Mt. Hawley Ins. Co.*, 95 F. App'x 132, 135 (6th Cir. 2004) (internal citations omitted).

"The moving party has the initial burden of proving that no genuine issue of material fact exists . . . ." *Stansberry v. Air Wis. Airlines Corp.*, 651 F.3d 482, 486 (6th Cir. 2011) (internal quotations omitted); cf. Fed. R. Civ. P. 56 (e)(2) (providing that if a party "fails to properly address another party's assertion of fact," then the court may "consider the fact undisputed for the purposes of the motion."). "Once the moving party satisfies its burden, 'the burden shifts to the nonmoving party to set forth specific facts showing a triable issue.'" *Wrench LLC v. Taco Bell Corp.*, 256 F.3d 446, 453 (6th Cir. 2001) (quoting *Matsushita Elec.*

4

*Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).  The nonmoving

party must "make an affirmative showing with proper evidence in order to defeat

the motion."  *Alexander v. CareSource*, 576 F.3d 551, 558 (6th Cir. 2009); *see also*

*Metro. Gov't of Nashville & Davidson Cnty.*, 432 F. App'x 435, 441 (6th Cir.

2011) ("The nonmovant must, however, do more than simply show that there is

some metaphysical doubt as to the material facts . . . .   [T]here must be evidence

upon which a reasonable jury could return a verdict in favor of the non-moving

party to create a genuine dispute.") (internal quotation marks and citations

omitted).

     Summary judgment is appropriate if the evidence favoring the nonmoving

party is merely colorable or is not significantly probative.  *City Management Corp.*

*v. United States Chem. Co.*, 43 F.3d 244, 254 (6th Cir. 1994).  In other words,

summary judgment is appropriate when "a motion for summary judgment is

properly made and supported and the nonmoving party fails to respond with a

showing sufficient to establish an essential element of its case. . . ."  *Stansberry*,

651 F.3d at 486 (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986)).

     The fact that Plaintiff is *pro se* does not lessen his obligations under Rule 56.

Rather, "liberal treatment of pro se pleadings does not require lenient treatment of

substantive law."  *Durante v. Fairlane Town Ctr.*, 201 F. App'x 338, 344 (6th Cir.

2006).  In addition, "[o]nce a case has progressed to the summary judgment stage, .

. . 'the liberal pleading standards under *Swierkiewicz* [*v. Sorema N.A.*, 534 U.S. 506, 512-13 (2002)] and [the Federal Rules] are inapplicable.'" *Tucker v. Union of Needletrades, Indus. & Textile Employees*, 407 F.3d 784, 788 (6th Cir. 2005) (quoting *Gilmour v. Gates, McDonald & Co.*, 382 F.3d 1312, 1315 (11th Cir. 2004)).  The Sixth Circuit has made clear that, when opposing summary judgment, a party cannot rely on allegations or denials in unsworn filings and that a party's "status as a pro se litigant does not alter [this] duty on a summary judgment motion."  *Viergutz v. Lucent Techs., Inc.*, 375 F. App'x 482, 485 (6th Cir. 2010); *see also United States v. Brown*, 7 F. App'x 353, 354 (6th Cir. 2001) (affirming grant of summary judgment against a *pro se* plaintiff because he "failed to present any evidence to defeat the government's motion").

Finally, as is also at issue here, the Court may grant summary judgment to the nonmovant "[a]fter giving notice and a reasonable time to respond[.]"  Fed. R. Civ. P. 56(f).

### E.    Analysis

#### 1.    Factual background[1]

---

[1] The instant case, which concerns the events of September 2016 and April 2017, does not appear to be related to *Witzke v. Bradley*, Case No. 2:16-cv-12776-AJT-MKM (E.D. Mich.), which arose "out of a warrantless search of Witzke's residence during his lawful arrest for a parole violation[,]" and regarding which the Sixth Circuit affirmed this Court's judgment.  *Witzke v. Bradley*, No. 16-2223, 2016 WL 9585326, at *1 (6th Cir. Dec. 30, 2016).  Nor does this case appear to be related to *Witzke v. Brewer*, Case No. 2:15-cv-12429-DPH-DRG (E.D. Mich.), in which

6

### a. Plaintiff's May 26, 2016 parole order

According to Plaintiff, his parole order was dated May 26, 2016.  (DE 47 ¶ 8; *see also* DE 67-2 ¶ 12.)  By way of background, "[w]hen a parole order is issued, the order shall contain the conditions of the parole and shall specifically provide proper means of supervision of the paroled prisoner in accordance with the rules of the bureau of field services."  Mich. Comp. Laws Ann. § 791.236(4).  As Plaintiff's parole order does not appear to be part of the record in this case, its terms are not clear, nor are Plaintiff's supervision conditions listed in the Offender Tracking Information System (OTIS), presumably because Plaintiff was discharged from the MDOC's jurisdiction on February 12, 2018.  *See* www.michigan.gov/corrections, "Offender Search" (last visited Oct. 15, 2018).  At best, the Court can only assume it contains the 13 or 14 "special conditions," described by number on Plaintiff's MDOC Parole Violation Worksheet and

---

Witzke petitioned for a writ of *habeas corpus* and sought a new hearing in connection with his September 2014 parole revocation, and regarding which the Sixth Circuit agreed with the State that "Witzke's re-release on parole deprives this court of jurisdiction over his appeal challenging the 2014 parole revocation." *Witzke*, 849 F.3d 338, 340 (6th Cir. 2017).  Since *habeas* cases are for injunctive relief only, unlike the present case, the jurisdictional considerations are not on par with those at issue here.  *See, e.g.*, *Preiser v. Rodriguez*, 411 U.S. 475, 494 (1973) ("If a state prisoner is seeking damages, he is attacking something other than the fact or length of his confinement, and he is seeking something other than immediate or more speedy release—the traditional purpose of habeas corpus. In the case of a damages claim, habeas corpus is not an appropriate or available federal remedy.").

Decision Forms (CFJ-226), and these conditions only seem to carry a substantive description if they are the subject of the incident at issue.  (DE 60-3, DE 60-5.)  In other words, on the record before it, the Court cannot place the alleged violations at issue here within the context of Plaintiff's May 26, 2016 parole order.

That being said, according to MDOC policy, "[a] field agent, law enforcement officer, or a Department employee authorized by the Director to arrest a parole violator, may arrest and restrain a parolee without a warrant and detain the parolee in any jail of the State if s/he has reasonable grounds to believe that the parolee violated parole or when a parole violation warrant has been issued." MDOC PD 06.01.120 ¶ J, effective Mar. 9, 2015.  *See also* Mich. Comp. Laws § 791.239 ("Arrest without warrant; detention of paroled prisoner"), Mich. Comp. Laws § 791.238(1) ("Each prisoner on parole shall remain in the legal custody and under the control of the department.  The deputy director of the bureau of field services, upon a showing of probable violation of parole, may issue a warrant for the return of any paroled prisoner. Pending a hearing upon any charge of parole violation, the prisoner shall remain incarcerated.").

### b. The September 28, 2016 arrest

Plaintiff received a parole violation dated August 29, 2016 for "residing with a known felon[.]"  (DE 60-3 at 1, DE 60-5 at 1, DE 67-2 ¶ 7.)  Plaintiff claims that, on or about September 6, 2016, he was directed to relocate to Better Days

8

Aftercare in River Rouge, MI and "to pay $125 a month of [hi]s SNAP [Supplemental Nutrition Assistance Program] benefits to Better Days Aftercare." (DE 47 ¶ 10-12.) Plaintiff "refused/failed to comply" with this directive. (DE 47 ¶ 13.) *Plaintiff claims his parole order did not contain either a curfew restriction or a condition that he reside at Better Days Aftercare.* (DE 47 ¶ 14.) Plaintiff further claims that he did not receive "written modifications or amendments to the May 26, 2016 parole order." (DE 47 ¶ 15.)

On September 28, 2016, Plaintiff was arrested by MDOC Staff and detained at DRC, which Plaintiff describes as a Level II prison. (DE 60-3 at 1; DE 47 ¶¶ 16-17, 27.) The parole violation charges allege that, on or about September 28, 2016, Plaintiff failed to comply with "*the written Order of Parole Board 4.3* by failing to reside at Better Days After Care as part of the Community Mental Health Housing program[,]" and "the house rules at Better Days Aftercare[,]" by failing to "pay for housing and/or follow curfew rules." (DE 60-2 at 1 (emphasis added); DE 67-2 ¶ 7.) (*See also* DE 47 ¶¶ 16-17, 19.) These appear to be technical parole violations. Mich. Comp. Laws Ann. § 791.402(o) ("a violation of the terms of a parolee's parole order that is not a violation of a law of this state, a political subdivision of this state, another state, or the United States or of tribal law.").

Five days later, on October 3, 2016, Plaintiff waived his right to a preliminary parole violation hearing, but the form also states: "I understand that

waiver of the preliminary hearing is not an admission of guilt and that I still have the right to a full revocation hearing before the Parole and Commutation Board." (DE 60-2 at 2; DE 47 ¶ 18.)  On October 5, 2016, following what appear to be two recommendations – one by agent Alex J. Smith and another by supervisor Carrie L. Skibinski - area manager Pullins-Govantes decided to continue Plaintiff's parole "with a 10-day lock up[,]" *i.e.*, September 28 – October 8.  (DE 60-3 at 1-2; *see also* DE 47 ¶¶ 21-22, DE 67-2 ¶ 8.)  That same day, Plaintiff was informed he would be released on or about October 11, 2016, by which date he would have been sanctioned with 13 days of "incarceration.".  (DE 47 ¶¶ 23-25, 40(c).)

### c.    The April 20, 2017 arrest

It seems that Plaintiff received parole violations dated October 26, 2016 and January 27, 2017, each for testing positive for cocaine.  (DE 60-5 at 1, DE 67-2 ¶ 7.)  Plaintiff was arrested by the Absconder Recovery Unit (ARU) Staff on April 20, 2017 and detained at DRC.  (DE 60-5 at 1; DE 47 ¶ 30.)  The parole violation charges allege that, on or about January 31, 2017, Plaintiff "failed to comply with *the written Order of Parole Board 2.1* by failing to attend treatment at DRMM (Oasis) as instructed[,]" and "changed [his] residence at the Detroit Rescue Mission . . . without the permission of [his] field agent."  (DE 60-4 at 1 (emphasis added).)  The charges also allege that, on or about February 1, 2017, Plaintiff "**failed to make [his] regularly scheduled report to [his] field agent or to make**

**any subsequent report**." (*Id*.) (*See also* DE 47 ¶ 32, DE 67-2 ¶ 7 (boldfaced type added).) These also appear to be technical parole violations. Mich. Comp. Laws Ann. § 791.402(o).

On April 24, 2017, Plaintiff waived his right to a preliminary parole violation hearing, but the form also states: "I understand that waiver of the preliminary hearing is not an admission of guilt and that I still have the right to a full revocation hearing before the Parole and Commutation Board." (DE 60-4 at 2; DE 47 ¶ 31.) On May 1, 2017, following what appear to be Smith and Skibinski's recommendations, area manager Pullins-Govantes listed her decision as: "Reinstate, Residential ReEntry Program, Extend Term[,]" and provided the following reason:

> Short term absconder mismanaging mental health diagnosis *by abusing cocaine*. Also has *treatment failure*. Reinstate w/ ASAT [Advanced Substance Abuse Treatment] programming at the DRC and extend parole term 6 months.

(DE 60-5 at 1-2 (emphases added).) Plaintiff contends that he was not "charged with substance abuse while he was purportedly a parole absconder," or "provided with any hearing at which he could have defended against such a charge." (DE 47 ¶ 37.) Yet, Plaintiff complains, his MDOC records "reflect that he did commit the three violations of parole[.]" (DE 47 ¶ 39.)

On or about May 3, 2017, Plaintiff was served with a new "Order of Parole," which "required [him] to complete a '*non-residential*' substance abuse treatment

program . . . at DRC." (DE 47 ¶ 33 (emphasis added).) According to Plaintiff, he was "detained at DRC until on or about September 6, 2017[,]" at which point he was "released . . . on parole status." (DE 47 ¶¶ 33, 40.) He alleges that, by September 6, 2017, he would have been sanctioned with approximately 140 days of "incarceration." (DE 47 ¶ 40(c).)

> ### 2.   Plaintiff's claims against Defendant Pullins-Govantes are based upon the Fourteenth Amendment Due Process Clause.

Plaintiff alleges that Defendant Pullins-Govantes made her October 5, 2016 and May 1, 2017 findings and decisions "without providing Plaintiff with any form of hearing or interview[.]" (DE 47 ¶¶ 21, 22, 36, 38.) Plaintiff's present motion seeks a finding of "liability as to Defendant Ebony M. Pullins-Govantes with respect to Count I of Plaintiff's Amended Complaint." (DE 60 at 1.) As to Defendant Pullins-Govantes, this cause of action alleges that:

> Defendant Pullins-Govantes' depriv[ed] Plaintiff of any form of hearing in connection with the parole violation charges served upon Plaintiff on or about October 3, 2016 and April 24, 2017 before making findings that Plaintiff did violate the conditions of parole and making the decisions on or about October 5, 2016 and May 1, 2017 to cause Plaintiff to be "sanctioned" for a period of days at DRC, the first sanction being 10-days incarceration (actually 13 days), and the second sanction lasting 140 [actually 139] days.

(DE 47 ¶ 40(c).) As previously noted, Plaintiff seeks multiple forms of declaratory and injunctive relief, as well as compensatory and punitive damages. (DE 47 at 13-15 ¶¶ A-J.)

12

### 3. Although Plaintiff waived his right to a preliminary parole violation hearing, he did not waive his right to a full revocation hearing.

#### a. The definition and purpose of parole

"[P]arole is a form of custody whereby the prisoner leaves his place of incarceration while remaining in the legal custody and control of the Board of Parole until termination of his sentence." *Bricker v. Michigan Parole Bd.*, 405 F. Supp. 1340, 1343 (E.D. Mich. 1975) (citing *Jones v. Cunningham*, 371 U.S. 236, 242 (1963)); *see also Johnson v. United States*, 529 U.S. 694, 711 (2000) (in the days before "supervised release," parole "was a release under supervision of a parole officer following service of some term of incarceration."). As the Supreme Court of Michigan penned many years ago,

> The purpose of a parole is to keep the prisoner in legal custody while permitting him to live *beyond the prison inclosure* so that he may have an opportunity to show that he can refrain from committing crime. It is a conditional release; the condition being that, if he makes good, he will receive an absolute discharge from the balance of his [s]entence; but, if he does not make good, he will be returned to serve his unexpired time.

*In re Eddinger*, 236 Mich. 668, 670, 211 N.W. 54, 54 (1926) (emphasis added). "The essence of parole is release from prison, before the completion of sentence, on the condition that the prisoner abide by certain rules during the balance of the sentence." *Morrissey v. Brewer*, 408 U.S. 471, 477 (1972).

#### b. *Morrissey v. Brewer*, 408 U.S. 471 (1972)

13

Plaintiff's sole argument in favor of summary judgment is that "Defendant Pullins-Govantes is Personally Liable to Plaintiff Under 42 U.S.C. § 1983 Because Her Conduct Deprived Plaintiff of Rights Secured Under the Due Process Clause of The Fourteenth Amendment to the United States Constitution[.]" (DE 60 at 11.) As Plaintiff points out, standard analysis under the Due Process Clause "proceeds in two steps: We first ask [1] whether there exists a liberty or property interest of which a person has been deprived, and if so we ask [2] whether the procedures followed by the State were constitutionally sufficient." *Swarthout v. Cooke*, 562 U.S. 216, 219 (2011) (citing *Kentucky Dept. of Corrections v. Thompson,* 490 U.S. 454, 460 (1989)). (DE 60 at 16-17.)

Plaintiff relies upon *Morrissey* in support of his argument. The issue in *Morrissey* was "whether the Due Process Clause of the Fourteenth Amendment requires that a State afford an individual some opportunity to be heard prior to revoking his parole." *Morrissey*, 408 U.S. at 472. The Supreme Court noted that "the liberty of a parolee . . . is valuable and must be seen as within the protection of the Fourteenth Amendment. Its termination calls for some orderly process, however informal." *Id*. at 482. "What is needed is an informal hearing structured to assure that the finding of a parole violation will be based on verified facts and that the exercise of discretion will be informed by an accurate knowledge of the parolee's behavior." *Id*. at 484. The Court then considered "the nature of the

14

process that is due," and described "two important stages in the typical process of parole revocation[,]" namely:  (a) arrest of parolee and preliminary hearing; and, (b) the revocation hearing.  *Id*. at 484-489.

### c.  Plaintiff waived his right to a preliminary parole violation hearing.

Plaintiff and Defendant Pullins-Govantes each rely upon MDOC Policy Directive 06.06.100 ("Parole Violation Process"), effective Mar. 1, 2013, which was in use at the time of Plaintiff's above-described parole violation charges.  (DE 60-6, DE 67-2 at 9-13.)  *See also* Mich. Comp. Laws §§ 791.238-791.240a.  By way of background, "[p]arolees must comply with all rules and special conditions issued by the Parole Board."  MDOC PD 06.06.100 (Policy Statement).  The policy directive contains provisions for a *preliminary* parole violation hearing. MDOC PD 06.06.100 ¶¶ L-R (italic added).  The purpose of this hearing, according to the MDOC's own Parole Violation Charges form (CFJ-168), "is to determine whether there is *probable cause* to believe that you have committed a parole violation."  (DE 60-2 at 2, 60-4 at 2 (emphasis added).)[2]

---

[2] Defendant also relies upon MDOC Operating Procedure 06.06.115 ("Parole Violation Processing"), effective Feb. 28, 2006.  (DE 67-2 ¶ 4, DE 67-2 at 15-52.) This OP contains multiple paragraphs regarding the use of CFJ-168 – the form used in this case – and several paragraphs concerning "processing after probable cause established by waiver, PV hearing, or preliminary court examination[.]" (DE 67-2 at 18-19 ¶¶ N-P, DE 67-2 at 26-32 ¶¶ 31-64.)

Similarly, as to the "arrest of [a] parolee and preliminary hearing[,]" *i.e.*, the "first stage," *Morrissey* offers that "due process would seem to require that some minimal inquiry be conducted at or reasonably near the place of the alleged parole violation or arrest and as promptly as convenient after arrest while information is fresh and sources are available." *Id*. at 485. "Such an inquiry should be seen as in the nature of a 'preliminary hearing' to determine whether there is *probable cause* or reasonable ground to believe that the arrested parolee has committed acts that would constitute a violation of parole conditions." *Id*. (emphasis added).

As evidenced by the two Parole Violation Charges (Forms CFJ-168) at issue in this case, and as Plaintiff concedes in his complaint, he waived such *preliminary* hearings on October 3, 2016 and April 24, 2017. (DE 60-2 at 2, DE 60-4 at 2, DE 47 ¶¶ 18, 31.)

### d. Plaintiff did not waive his right to a full revocation hearing.

In addition, the policy directive contains provisions for a <u>parole violation hearing</u>. MDOC PD 06.06.100 ¶¶ S-AA. Plaintiff claims he did not "waive a formal parole revocation hearing or otherwise admit guilt to the alleged parole violations served upon Plaintiff . . . ." (DE 47 ¶¶ 24, 35.) This is correct, as, directly above the signature line, the Parole Violation Charges form expressly provides: "I understand that waiver of the preliminary hearing is *not an admission of guilt* and that I *still have the right to a full revocation hearing* before the Parole

16

and Commutation Board." (DE 60-2 at 2, 60-4 at 2 (emphases added).) Therefore, the Undersigned agrees that Plaintiff "was not heard or given any opportunity to address either the alleged parole violations or the appropriateness of sanctions." (DE 60 at 13; *see also* DE 69 at 5-6.)[3]

### 4. Whether the multi-day sanctions to DRC constituted a revocation of Plaintiff's parole?

*Morrissey*, MDOC PD 06.06.100 and OP 06.06.115 provide the backdrop for Plaintiff's challenge to his 13-day and 139-day sanctions of "incarceration." (DE 47 ¶ 40(c); DE 60 at 14-16.) Although he acknowledges that the words "'parole revocation' may not have been used . . .[,]" Plaintiff claims he was "*effectively* removed from the community in both instances[,]" based upon Defendant Pullins-Govantes's decisions. (DE 60 at 13-14 (emphasis added).) This, Plaintiff argues, entitled him to the process set forth in *Morrissey* and MDOC 06.06.100. (DE 60 at 14.)

### a. Parole and specialized supervision

Although not binding, the MDOC's own descriptions of parole and specialized supervision shed light upon the issues before this Court. Specifically, the MDOC's Field Operations Administration (FOA) "is responsible for state parole and probation supervision as well as other methods of specialized

---

[3] Moreover, he claims he did not receive copies of Defendant Pullins-Govantes's findings and decisions, although he "obtained these at a later date under Michigan's Freedom of Information Act." (*Id.*)

supervision." *See* www.michigan.gov/corrections, "Parole and Probation." While

on parole:

> . . . an offender is typically supervised by a parole agent for a period
> of one to four years. An offender is managed and guided by a parole
> agent who serves as a resource to increase the offender's successful
> reintegration into the community. Parole Agents coordinate needed
> services for the offender such as mental health treatment, substance
> abuse counseling, housing and employment.

*Id*. "The FOA also employs specialized supervision of offenders including the use

of electronic monitoring of offenders in the community, sex offender specific

caseloads, quick and decisive responses to technical parole violations in lieu of

return to incarceration, and coordinating and overseeing offenders who are

supervised under the Interstate Compact Agreement." *Id*. "The Parole Board[,]

which is the sole paroling authority for felony offenders committed to the

jurisdiction of the Michigan Department of Corrections[,] is also located under

FOA." *Id*.

> **b. Whether labeled a reinstatement, continuation, or
> extension of parole, the multi-day assignments to
> DRC were an effective revocation of parole.**

Plaintiff asserts that the MDOC's practice "is pure circumvention of the

dictates of *Morrissey*[,]" and explains that "[a] game of semantics is played by

MDOC in which prisoners are still considered to be on parole status while at DRC,

although MDOC will conveniently 'extend' the period of parole in order to not be

required to discharge parolees if the date of parole discharge nears while the

'parolee' (prisoner) is detained at DRC." (DE 60 at 15, DE 60 at 15 n.10.) On the other hand, Defendant Pullins-Govantes claims that Plaintiff was found to have "violated the terms and conditions of his parole . . . [,]" and his parole was "*reinstated or continued*." (DE 67 at 4, 8-11.) As to her October 5, 2016 decision, she attests that she "made the decision to continue parole with a 10-day lock up[,]" explaining that Plaintiff "was at the [DRC] which houses parole violators." (DE 67-2 ¶ 8; *see also* DE 67 at 3-4.) As to her May 1, 2017 decision, she attests that she "made the decision to reinstate his parole, to reinstate him to the residential re-entry substance abuse treatment program, and to extend his parole[,]" explaining that Plaintiff's parole "was extended in order for him to complete the substance abuse programing that is house[d] exclusively at the [DRC]." (DE 67-2 ¶ 10; *see also* DE 67 at 4-5, 9, 11.)[4] In addition, she attests:

> My decision on May 1, 2017 was not a return to prison or a determination to revoke his parole. If I made the determination to revoke Witzke's parole, a parole revocation hearing would have been scheduled utilizing the process outlined in the attached operating procedure. The only decision I made was to reinstate Witzke to parole and to the conditions established by the Michigan Parole Board that he was ordered to follow.

(DE 67-2 ¶ 11.)

In sum, Defendant takes the position that, "[b]ecause [Plaintiff's] parole was not revoked, there was no need for a parole revocation hearing." (DE 67 at 9; *see*

---

[4] *See also* MDOC PD 06.03.104 ("RESIDENTIAL REENTRY PROGRAM FACILITIES"), effective Oct. 24, 2012; Mich. Comp. Laws §§ 791.231, 791.265a.

*also* DE 67 at 11.)  Stated otherwise, Defendant contends that Plaintiff's parole

"was not revoked by the Michigan Parole Board – the only entity with the

authority to revoke parole."  (DE 67 at 10-11.)  Instead, at least with respect to the

second sanction, "part of the reinstatement included a requirement that Witzke

complete a drug addiction treatment program given his history of drug abuse[,]"

*i.e.*, he was reinstated "to the parole conditions he was absconding from" and

placed into "a drug treatment program since he failed to complete it."  (DE 67 at

11, 10.)  Defendant maintains that the fact that Plaintiff "was not allowed to leave"

the DRC "does not equate to a denial of due process or a parole revocation[,]"

(*id.*), apparently because it does not constitute "incarceration."

However, as the Supreme Court stated, "the liberty of a parolee, although

indeterminate, includes many of the core values of unqualified liberty and its

termination inflicts a 'grievous loss' on the parolee and often on others."

*Morrissey*, 408 U.S. at 482.  Here, the Court should conclude that Defendant

Pullins-Govantes's multi-day sanctions to DRC were an effective revocation of

parole that infringed on Plaintiff liberty interests.  Plaintiff makes a point that each

of his aforementioned stays at DRC was a period of "incarceration."  (DE 47 ¶¶ 22,

38, 40(c); DE 60 at 3, 4, 8, 10.)  This assertion is consistent with the MDOC's

website's descriptions of DRC.  For example, when listing DRC as one of the

specialized supervision options, the MDOC states:

> The Detroit Reentry Center (DRC) falls under the Office of Parole
> and Probation Services within the Field Operations Administration.
> The goal of DRC is to enhance public safety and parolee success. The
> DRC houses parolees and prisoners.

*See* https://www.michigan.gov/corrections/0,4551,7-119-1435_1498---,00.html

(last visited Oct. 16, 2018). The website also notes that DRC "contains buildings

for housing, educational and vocational instruction, food services, a health clinic,

dialysis unit, administrative offices, warehouse storage, MSI factory, and

security."[5] In addition, "[t]he prison has a small segregation unit and is separated

from the surrounding area by a six-foot landscaped berm with evergreen and

deciduous trees." *Id*. What is more, "[t]he Institution houses Parolees, Parole

Violators (Men and Women), Probationers, and Prisoners." *Id*. And, "[s]ecurity is

provided by two 12-foot fences, electronic detection systems, razor-ribbon wire,

gun towers and buffer fencing." *Id*. As Plaintiff describes it, "DRC is not . . . a

'halfway house' or other community type of living environment[,]" and "[t]he

prisoners do not go about in the community for anything." (DE 60 at 15 n.9.)

In the end, the Court should conclude that Defendant Pullins-Govantes's

multi-day sanctions to DRC, a facility which is secured "by two 12-foot fences,

electronic detection systems, razor-ribbon wire, gun towers and buffer fencing[,]"

(*see* n.5 above), are an effective revocation of parole that infringed on his liberty

---

[5] *See* https://www.michigan.gov/corrections/0,4551,7-119-68854_1381_1385-
5350--,00.html (last visited Oct. 5, 2018).

interests.  Even if the descriptions of DRC did not paint a picture of incarceration,

Defendant Pullins-Govantes appears to admit that Plaintiff "was not allowed to

leave the facility he was at . . . ."  (DE 67 at 11.)  Also, the Court is perplexed by

Pullins-Govantes contention that "the only decision made was that Witzke violated

the terms and conditions of his parole and that it should be reinstated or

continued."  (DE 67 at 8.)  The relevant state statute and the relevant policy

directive seem to associate *reinstatement* of parole with a *lack of probable cause* at

the preliminary parole violation hearing, a *failure to sustain charges* at the parole

violation hearing, or with *insufficient support* for a parole violation. *See* MDOC

PD 06.06.100 ¶¶ R, Y; Mich. Comp. Laws § 791.240a(8) ("[i]f the evidence

presented is insufficient to support the allegation that a parole violation occurred,

the parolee shall be reinstated to parole status."); Mich. Comp. Laws Ann. §

791.241 ("When the parole board ha[s] determined the matter it shall enter an

order rescinding such parole, or reinstating the original order of parole or enter

such other order as it may see fit."). Defendant is advocating form over substance,

*i.e.*, using *labels* of reinstatement / continuation / extension for what is *effectively* a

revocation of parole that infringed on Plaintiff's liberty interests.

### c.      Plaintiff was entitled to, but did not receive, the process due under *Morrissey*.

There remains the question of "what process [wa]s due[.]" *Morrissey*, 408

U.S. at 483.  As noted above, Plaintiff waived his rights to a preliminary or "first

stage" hearing.  He did not, as Defendant suggests, waive a hearing "to present any evidence as to whether he violated a condition of parole[,]" such that the decision was left "to the Parole Violation Specialist, in this case, Pullins-Govantes."  (DE 67 at 10.)

The Supreme Court has instructed that "the revocation hearing," *i.e.*, the second stage, "must be the basis for more than determining *probable cause*; it must lead to a final evaluation of any *contested* relevant facts and consideration of whether the facts as determined warrant revocation."  *Morrissey*, 408 U.S. at 488 (emphases added).  The Supreme Court further noted:  "We cannot write a code of procedure; that is the responsibility of each State.  Most States have done so by legislation, others by judicial decision usually on due process grounds."  *Morrissey*, 408 U.S. at 488.  *See also* Mich. Comp. Laws § 791.240a ("Grounds and procedure for revocation of parole; reinstatement of parole").

Apparently referring to these sentences, Defendant contends that "there is no automatic right to a formal revocation hearing if there are no *contested* facts[,]" and "[i]t is up to the individual states to determine the procedure."  (DE 67 at 10 (emphasis added).)  Then, apparently referring to MDOC PD 06.06.100 and/or MDOC OP 06.06.115, which are cited by Pullins-Govantes in her affidavit, Defendant contends that "[t]his procedure was effectuated with Witzke[,]" and asserts that Plaintiff waived the "informal hearing" discussed in *Morrissey*, 408

23

U.S. at 484-485.  (DE 67 at 10-11, DE 67-2 ¶ 4.)  However, in so doing, Defendant seems to equate *Morrissey*'s permission to conduct an "informal hearing" that is "structured to assure that the finding of a parole violation will be based on verified facts and that the exercise of discretion will be informed by an accurate knowledge of the parolee's behavior[,]" *Id*. at 484, with MDOC PD 06.06.100's provision for a "preliminary hearing" at which probable cause is determined.  Plaintiff waived the latter, not the former.  As Plaintiff convincingly explains, "[m]aking a *probable cause* determination [at the preliminary parole revocation stage] is a far cry from making a decision . . . of whether a parolee did violate the conditions of parole." (DE 69 at 4 (emphasis added).)

In sum, Plaintiff did not waive his right to a full revocation hearing, and his sanctions to DRC amounted to a revocation of his parole that infringed upon his liberty.  As such, he was entitled to the procedure set forth in *Morrissey*.  Plaintiff not having received a full revocation hearing, it is clear that he did not receive the process he was due under *Morrissey* (or as set forth in MDOC PD 06.06.100 ¶¶ S-AA).

### 5.  Qualified immunity

Defendant additionally argues that "Witzke's motion should be denied, and summary judgment granted for the Defendant as Pullins-Govantes is entitled to

qualified immunity." (DE 67 at 12-13.) As the Court explained in *Williams v. Mehra*, 186 F.3d 685 (6th Cir. 1999):

> The procedure for evaluating claims of qualified immunity is tripartite:
>
> First, we determine whether a constitutional violation occurred; second, we determine whether the right that was violated was a clearly established right of which a reasonable person would have known; finally, we determine whether the plaintiff has alleged sufficient facts, and supported the allegations by sufficient evidence, to indicate that what the official allegedly did was objectively unreasonable in light of the clearly established constitutional rights.

*Id.* at 691 (citing *Dickerson v. McClellan*, 101 F.3d 1151, 1157-1158 (6th Cir.1996)).

Defendant accurately quotes the law on this procedure. (DE 67 at 12.) However, Defendant Pullins-Govantes does not successfully put forth a qualified immunity defense. Although she cites several cases in the introduction to her qualified immunity argument, the entirety of her specific argument is as follows:

> Here, Defendant is entitled to qualified immunity because by finding Witzke violated a condition of his parole, she did not violate his clearly established constitutional rights. In fact, *the only right that is guaranteed to Witzke is that he be entitled to a preliminary hearing*, if he so chooses. He was given this opportunity, but he waived it. *Where he waived the hearing and his parole was not revoked*, Pullins-Govantes did not violate his clearly established constitutional rights, thus she is entitled to qualified immunity.

(DE 67 at 13 (emphases added).)

As set forth in previous sections, although Plaintiff waived his right to a preliminary parole violation hearing, he *did not* waive his right to a full revocation

hearing, and Plaintiff's multi-day sanctions to DRC amounted to a revocation of his parole. As such, to the extent Defendant re-argues that Plaintiff waived his right to the hearing required under *Morrissey* or that Plaintiff's parole was not revoked, *i.e.*, a constitutional violation did not occur, Defendant's qualified immunity argument is superfluous. (*Compare* DE 67 at 9, 11, *with* DE at 13.)

Additionally, Defendant does not appear to argue that Plaintiff's rights were not clearly established. Defendant does not cite any cases in support of the sentences in the above-quoted paragraph, which one would expect if a litigant is attempting to illustrate any lack of clarity in the law. Conversely, if Defendant intended to rely upon *Morrissey* to illustrate that the law was clearly established, *Morrissey* expressly discusses both the "arrest of parolee and preliminary hearing[,]" and "the revocation hearing[,]" *id.*, 408 U.S. at 485, 487. Accordingly, the Undersigned disagrees with Defendant that Plaintiff was only entitled to a preliminary hearing.

In sum, Defendant has not successfully put forth a qualified immunity defense.

### F.    Conclusion

In addition to requesting that the Court deny Plaintiff's motion for summary judgment and grant summary judgment in her favor, Defendant contends that, at a minimum, "this Court should deny Witzke's motion as premature as the parties

26

have yet to conduct discovery." (DE 67 at 14.) But this argument is now moot. It may have been true on March 15, 2018 (when the instant motion was filed), and it may also have been true on April 14, 2018 (when Plaintiff filed his reply). However, shortly thereafter, on April 16, 2018, I entered a scheduling order, which set an August 17, 2018 discovery deadline and expressly warned: "Due to the age of this case, requests to extend this deadline are unlikely to be granted, so the parties are encouraged to commence discovery immediately." (DE 70.) Since then, the only substantive development in this case has been the stipulated dismissal of Defendants Marlan and Smith. In other words, the Court has not received a Fed. R. Civ. P. 56(d) motion from anyone and may proceed to rule upon the pending dispositive motion.

In sum, for the reasons stated above, the Court should **GRANT** Plaintiff's March 15, 2018 motion for partial summary judgment as to Defendant Pullins-Govantes (DE 60) and **DENY** Pullins-Govantes's countervailing request for summary judgment in her favor (DE 67 at 6, 14). Plaintiff having been discharged from the MDOC's jurisdiction on February 12, 2018, his November 14, 2017 amended/supplemental complaint's requests for declaratory and injunctive relief - to the extent these are sought against Pullins-Govantes (the only remaining Defendant) and to the extent they are not already addressed above – are now moot. (*See* DE 47 at 13-14 ¶¶ A-D.) *See*, *e.g.*, *Umbarger v. Michigan*, No. 1:12-CV-603,

2013 WL 5538766, at *3 (W.D. Mich. Oct. 8, 2013) ("Plaintiff's has served his

sentence and been discharged from parole. All his claims for declaratory relief

regarding his parole and parole discharge dates are moot.").

If the Court agrees with these conclusions, then the only matters left for trial

will be Plaintiff's requests for compensatory and punitive damages against

Defendant Pullins-Govantes for the above-described deprivations of liberty

without due process of law. (DE 47 at 14-15 ¶¶ E-H.)

## III. PROCEDURE ON OBJECTIONS

The parties to this action may object to and seek review of this Report and

Recommendation, but are required to file any objections within 14 days of service,

as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule

72.1(d). Failure to file specific objections constitutes a waiver of any further right

of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health &

Human Servs.*, 932 F.2d 505 (6th Cir. 1981). Filing objections that raise some

issues but fail to raise others with specificity will not preserve all the objections a

party might have to this Report and Recommendation. *Willis v. Sec'y of Health &

Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of

Teachers Local 231*, 829 F.2d 1370, 1273 (6th Cir. 1987). Pursuant to Local Rule

72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," and "Objection No. 2," *etc.* Any objection must recite precisely the provision of this Report and Recommendation to which it pertains. Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity. Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d). The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," *etc.* If the Court determines that any objections are without merit, it may rule without awaiting the response.

Dated: October 19, 2018          *s/Anthony P. Patti*
                                 Anthony P. Patti
                                 UNITED STATES MAGISTRATE JUDGE


**Certificate of Service**

I hereby certify that a copy of the foregoing document was sent to parties of record on October 19, 2018, electronically and/or by U.S. Mail.

                                 s/Michael Williams
                                 Case Manager for the
                                 Honorable Anthony P. Patti