UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

SCOTT ANDREW WITZKE,

             Plaintiff,

-vs-

JORDAN RIECK; IAN HOWARD;
AARON KOWALSKI; CRAIG WHITE;
and ROBERT ALLEN MCLEAN, in
their individual capacities for monetary
damages; and THE CITY OF MADISON
HEIGHTS, Michigan,

             Defendants.

_____ /

CA: 21-11346

HON: MATTHEW F. LEITMAN
MAG. DAVID R. GRAND

Scott Andrew Witzke
In Pro se
336 N. Saginaw St.
Pontiac, MI
(734) 600-2446
scottawitzke@gmail.com

ROSATI SCHULTZ JOPPICH
& AMTSBUECHLER PC
By:  Holly S. Battersby  (P72023)
Margaret T. Debler (P43905)
Attorneys for Defendants Rieck,
Howard, Kowalski, and White
27555 Executive Drive, Ste. 250
Farmington Hills, MI  48331
(248) 489-4100
hbattersby@rsjalaw.com
mdebler@rsjalaw.com

_____ /

## DEFENDANTS KOWALSKI AND HOWARD'S RESPONSE TO PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT

Defendants, **JORDAN RIECK, IAN HOWARD, AARON KOWALSKI AND CRAIG WHITE,** through their attorneys, **ROSATI, SCHULTZ, JOPPICH & AMTSBUECHLER, P.C.**, respond to Plaintiff's Motion for Partial Summary Judgment on the Issue of Liability and relies upon the attached Brief in Support, and Exhibits.

<div style="margin-left:40%">

ROSATI SCHULTZ JOPPICH
& AMTSBUECHLER PC


s/  Holly S. Battersby
Attorney for Defendants Rieck, Howard,
Kowalski andWhite
27555 Executive Drive, Ste. 250
Farmington Hills, MI 48331
(248) 489-4100
hbattersby@rsjalaw.com
(P72023)

</div>

DATED:  March 1, 2023

1

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

SCOTT ANDREW WITZKE,

           Plaintiff,                    CA: 21-11346

-vs-

                                      HON: MATTHEW F. LEITMAN

JORDAN RIECK; IAN HOWARD;          MAG. DAVID R. GRAND
AARON KOWALSKI; CRAIG WHITE;
and ROBERT ALLEN MCLEAN, in
their individual capacities for monetary
damages; and THE CITY OF MADISON
HEIGHTS, Michigan,

           Defendants.
_____ /

Scott Andrew Witzke
In Pro se
336 N. Saginaw St.
Pontiac, MI
(734) 600-2446
scottawitzke@gmail.com

ROSATI SCHULTZ JOPPICH
& AMTSBUECHLER PC
By:  Holly S. Battersby  (P72023)
Margaret T. Debler (P43905)
Attorneys for Defendants Rieck,
Howard, Kowalski, and White
27555 Executive Drive, Ste. 250
Farmington Hills, MI  48331
(248) 489-4100
hbattersby@rsjalaw.com
mdebler@rsjalaw.com
_____ /

## **BRIEF IN SUPPORT OF PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT**

# <u>INDEX OF AUTHORITIES</u>

## <u>CASES</u>

*Anderson v Creighton*, 483 U.S. 635 (1987) ............................................................19

*Baranski v. Fifteen Unknown Agents of Bureau of ATF*, 452 F3d 433
  (6th Cir. 2006)...........................................................................................................19

*Brosseau v. Haugen*, 543 US 194 (2004) ................................................................19

*Chappell v. Cleveland*, 585 F3d 901 (6th Cir. 2009)...............................................20

*Cherrington v. Skeeter*, 344 F.3d 631 (6th Cir.2003)..............................................13

*County of Riverside v. McLaughlin*, 500 U.S. 44 (1991) ................................. 14, 15

*Darrah v. Oak Park*, 255 F.3d 301 (6th Cir. 2001) .................................................10

*Daubenmire v. Columbus*, 507 F3d 383 (6th Cir 2008) ..........................................10

*Dorsey v Barber*, 517 F3d 389 (6th Cir. 2008).......................................................18

*Drogosch v. Metcalf*, 557 F.3d 372 (6th Cir. 2009) ......................................... 13, 14

*Everson v. Leis*, 556 F.3d 484 (6th Cir. 2009).......................................................18

*Feathers v. Aey*, 319 F.3d 843 (6th Cir. 2003) .......................................................19

*Harlow v. Fitzgerald*, 457 U.S. 800 (1982) ............................................................17

*Heck v Humphrey*, 512 US 477 (1994)....................................................................10

*Johnson v Moseley*, 790 F3d 649 (6th Cir. 2015).....................................................20

*Knoblauch v. Kenyon*, 163 Mich. App. 712 (1987).................................................10

*Marr v. City of Detroit*, No. CIV. 07-10931, 2009 WL 112084, at \*6
  (E.D. Mich. Jan. 15, 2009)............................................................................ 15, 16

*Mullenix v. Luna*, 577 U.S. 7, 136 S.Ct. 305, 193 L.Ed.2d 255 (2015) .................22

*Pearson v. Callahan*, 555 U.S. 223 (2009)............................................. 17, 18, 19

*Peete v. Metro Gov't of Nashville*, 486 F3d 217 (6th Cir. 2007) ............................18

*Plumhoff v. Rickard,* 134 S.Ct 2012 (2014)............................................................19

*Poe v. Hayden,* 853 F.2d 418 (6th Cir. 1988)..........................................................17

*Rayfield v. City of Grand Rapids*, 768 F. App'x 495 (6th Cir. 2019).....................24

*Roberson v. Wynkoop*, No. 21-1240, 2021 WL 5190902, at \*2
  (6th Cir. Nov. 9, 2021)................................................................................... 23, 24

*Rudlaff v. Gillispie*, 791 F.3d 638 (6th Cir. 2015)..................................................18

*Saucier v. Katz*, 533 U.S. 194 (2001) ............................................................... 19, 20

*Toms v. Taft*, 338 F.3d 519 (6th Cir. 2003) .............................................................19

*Walker v. Schaeffer*, 854 F.2d 138 (6th Cir 1988)..................................................10

## <u>STATUTES</u>

MCL 764.13 ......................................................................................................... 13, 14

## <u>QUESTIONS PRESENTED</u>

**I.  WHETHR THERE WAS AMPLE PROBABLE CAUSE FOR PLAINTIFF'S ARREST BY THE MICHIGAN STATE POLICE AND SUBSEQUENT DETENTION AT THE MADISON HEIGHTS POLICE DEPARTMENT; THERE WAS NO "SEPARATE ARREST" OF PLAINTIFF BY OFFICER KOWALSKI OR HOWARD?**

> Plaintiff says,"No."
> Defendants say, "Yes."

**II.  WHETHER PLAINTIFF HAS EVIDENCE THAT OFFICERS KOWALSKI OR HOWARD PARTICIPATED IN THE DECISION REGARDING PLAINTIFF'S ARRAIGNMENT OR RELEASE AS ARRESTING OFFICERS?**

> Plaintiff says,"Yes."
> Defendants say, "No."

**III.  WHETHER A 4TH AMENDMENT LIABILITY CAN BE ESTABLISHED AGAINST OFFICERS KOWALSKI OR HOWARD BECAUSE PLAINTIFF'S REQUEST TO WORK AS A CONFIDENTIAL INFORMANT FOR THE MADISON HEIGHTS POLICE CREATED AN EXTRAORDINARY CIRCUMSTANCE JUSTIFYING HIS DETENTION FOR MORE THAN 48 HOURS?**

> Plaintiff says,"Yes."
> Defendants say, "No."

**IV.  WHETHER DEFENDANTS KOWALSKI AND HOWARD ARE ENTITLED TO QUALIFIED IMMUNITY FROM PLAINTIFF'S SUIT BECAUSE THEIR CONDUCT DID NOT VIOLATE PLAINTIFF'S CLEARLY ESTABLISHED CONSTITUTIONAL RIGHTS?**

> Plaintiff says,"No."
> Defendants say, "Yes."

## COUNTER-STATEMENT OF MATERIAL FACTS[1]

On July 30, 2019, a Madison Height Special Investigations Unit ("SIU") was investigating narcotics use in within the City, near the area of Lincoln and Stephenson Highway. (Ex. A – Rieck Affidavit; Ex. B – White Affidavit; Ex. C – Howard Affidavit[2]). The crew had received information that narcotics dealer John Doe[3] would be delivering methamphetamines in that area, traveling as a passenger in a black Ford Fusion, with a license plate number provided, driven by another male. (Ex. A – Rieck Affidavit; Ex. B – White Affidavit). Madison Heights Detective Jordan Rieck, Sergeant Craig White and Officer Ian Howard were three of the members of the SIU who set up surveillance in the area identified by the informant. (Ex A – Rieck Affidavit; Ex. B – White Affidavit; Ex. C- Howard Affidavit).

At approximately 4:00 p.m., as the informant predicted, Det. Rieck, Sgt. White and Officer Howard observed a black Ford Fusion with the specified license plate driving in the area of Lincoln and Stephenson Highway, with an unknown (but later identified) white male driving and John Doe (who was positively identified

---

[1] Defendants incorporate by reference the Statement of Facts set forth in former Defendant McLean's Motion for Summary Judgment. ECF 17, Page ID No. 78-79. The Court dismissed Trooper McLean from this action on July 7, 2022. ECF 54.

[2] Defendant Howard's attached Affidavit has been reviewed and approved by this Defendant with a signed / notarized version to be supplemented shortly.

[3] Defendants use the name "John Doe" as Plaintiff was a confidential informant assisting in this arrest.

through a photo obtained through a police database) sitting in the passenger seat. (Ex. A – Rieck Affidavit; Ex. B – White Affidavit).  The SIU began to surveil the Fusion as it drove westbound on I-696 to a trailer park in Lansing, where Doe was known to reside.  (Ex. A – Rieck Affidavit; Ex. B – White Affidavit; Ex. C – Howard Affidavit).  Doe and the driver of the vehicle exited the Fusion and entered a trailer after Doe retrieved a black duffel bag from the trunk.  (Ex. A – Rieck Affidavit; Ex. B – White Affidavit).  Suspecting that Doe may make another delivery of narcotics to Madison Heights, the SIU maintained surveillance at his residence.  (Ex. A- Rieck Affidavit; Ex. B – White Affidavit).

Just before 8:00 p.m., Det. Rieck, Sgt. White and Officer Howard observed a man, later identified as Plaintiff Scott Witzke, exit Doe's trailer and get into the driver's seat of a Chevy Malibu.  (Ex. A– Rieck Affidavit; Ex. B – White Affidavit; Ex. C – Howard Affidavit).  Doe came out of the trailer as well and the two spoke for several minutes before Plaintiff went back inside the residence.  (Ex. A – Rieck Affidavit; Ex. B – White Affidavit).  Dispatch ran the plate of the Chevy Malibu Plaintiff had been occupying through the Law Enforcement Information Network ("LEIN") and advised the SIU officers that the vehicle was stolen out of Ohio.  (Ex. B – White Affidavit; Ex. A – Rieck Affidavit).  Plaintiff then left the trailer park in the Malibu and got onto I-96 East as the SIU, including Det. Rieck, Sgt. White and Officer Howard continued surveillance.  (Ex. A – Rieck Affidavit; Ex. B – White Affidavit).  As he followed Plaintiff's vehicle, Sgt. White notified the Michigan

2

State Police of the stolen Malibu so that an arrest could be made.  (Ex. B – White Affidavit, Ex. D – PE Trans 2, pp. 18-19).  The officers observed Plaintiff driving erratically on the highway, weaving and failing to stay within his lane several times.  (Ex. A – Rieck Affidavit; Ex. B – White Affidavit).

In the area of I-696E and Orchard Lake, Michigan State Police Trooper Robert McLean stopped Plaintiff.  (Ex. D – PE Trans 2, pp. 5).  Trooper McLean had confirmed with his own dispatch that the vehicle Plaintiff was driving was stolen and, consequently, activated his overhead lights to pull Plaintiff over.  (Ex. D – PE Trans 2, pp. 5, 14).  After confirming that Plaintiff's name appeared on the rental agreement for the vehicle, and that the vehicle matched the vehicle identified in the rental agreement, Trooper McLean placed Plaintiff under arrest.  (Ex. D – PE Trans 2, pp. 6, 12).  At this time, the Madison Heights SIU watched from their respective police vehicles as Plaintiff was placed under arrest.  (Ex. A – Rieck Affidavit; Ex. B – White Affidavit; Ex. C – Howard Affidavit).  After his arrest, Plaintiff was placed inside Trooper McLean's squad car so that an inventory search could be conducted of the Malibu, pursuant to standard Department procedure, prior to impoundment.  (Ex. D – PE Trans 2, pp. 7, 12, 16-17).  During that inventory search, two containers of methamphetamines, several syringes and some analogues were located by the MSP Troopers in the trunk of Plaintiff's vehicle.  (Ex. D – PE Trans 2, pp. 7).

After locating the narcotics, Trooper McLean read Plaintiff his *Miranda* rights and Plaintiff indicated that he wanted to talk to the Trooper.  (Ex. D – PE Trans 2,

pp. 8; Ex. E – McLean Video, approx. 16:00).  During that discussion, Plaintiff advised that he was headed to the Red Roof Inn in Madison Heights to deliver narcotics.  (Ex. D – PE Trans 2, pp. 8-9).  He additionally told Trooper McLean that he wanted to work with the police, stating, "Let's cut to the chase here, I need to speak with someone …" (Ex. E – McLean Video, approx. 17:00). Plaintiff indicated, there are "bigger fish to fry. . . something is going down tomorrow morning" and "if this is not discussed tonight and I'm missing out of action tomorrow, I won't be trusted after tomorrow."  (Ex. E – McLean Video, approx. 17:00; Ex. D – PE Trans 2, pp. 8).  He further described that "several ounces" would be delivered and he had knowledge regarding drug activity at Madison Heights hotels.  (Ex. E – McLean Video, approx. 20:30).  Plaintiff further represented that he could tell the detective, presumably referring to a Madison Heights officer, some names that he may recognize and that he had "free range to buy ounces at a time." (Ex. E – McLean Video, 24:30).   He provided Trooper McLean with several other details regarding the drug trade as he sat in the back of the police vehicle.  (Ex. E – McLean Video).

Trooper McLean asked another MSP Trooper to inform the Madison Heights officers that Plaintiff was "willing to talk" and assured Plaintiff that Madison Heights would be notified once they arrived at the MSP Post.  (Ex. E – McLean Video, approx. 17:40, 20:30).  Plaintiff asked what Madison Heights had to do with the arrest and Trooper McLean advised him that the MSP and Madison Heights were working together.  (Ex. E – McLean Video, approx. 18:50).  Plaintiff pointed

Trooper McLean to a confidential informant card located inside his wallet to prove that he had been working with Canton Township. (Ex. E – McLean Video, approx. 17:50). He explained to Trooper McLean that he had been found to be a credible informant on other cases. (Ex. E – McLean Video, approx. 21:30). Plaintiff also indicated that he would need access to the contacts in his cell phone that night. (Ex. E – McLean Video, approx. 17:55, 18:20). Plaintiff admitted to the Trooper that he was on his way to a narcotics drop off when he was arrested. (Ex. E – McLean Video, approx. 23:00).

Trooper McLean transported Plaintiff and his property from the scene of the arrest to the Michigan State Police Metro North Post. (Ex. F – McLean Affidavit). The Metro North Post does not have the capability to house detainees, so Plaintiff had to be transferred to another facility for housing after his arrest. (Ex. F – McLean Affidavit; Ex. G – Kowalski Affidavit[4]; Ex. C – Howard Affidavit; Ex. A – Rieck Affidavit; Ex. B – White Affidavit). Madison Heights uniformed patrol officer Aaron Kowalski was dispatched to the Metro North Post with the instruction that Plaintiff needed to be brought back to the Madison Heights lockup facility for lodging. (Ex. G – Kowalski Affidavit; Ex. C – Howard Affidavit). Officer Howard, who had been working with the SIU that day, assisted with the transport. (Ex. G – Kowalski Affidavit; Ex. C – Howard Affidavit).

---

[4] Defendant Kowalski's attached Affidavit has been reviewed and approved by this Defendant with a signed / notarized version to be supplemented shortly.

When Officers Kowalski and Howard arrived at the MSP Post, they continued MSP's custody based on Trooper McLean's arrest for Unlawful Driving Away of an Automobile (arising from the stolen car) and felony Possession with Intent to Deliver Methamphetamines, transporting him to the Madison Heights Police Department for housing.  (Ex. F – McLean Affidavit, Ex. C – Howard Affidavit, Ex. G – Kowalski Affidavit).  Contrary to Plaintiff's erroneous belief, no "new" arrest was effectuated by Officers Kowalski or Howard.  (Ex. F – McLean Affidavit; Ex. G – Kowalski Affidavit; Ex. C – Howard Affidavit; Ex. A – Rieck Affidavit; Ex. C – Howard Affidavit).  Plaintiff was never "released from," or free to leave from, the Metro North Post at any point prior to custody being transferred to Officers Kowalski and Howard.  (Ex. F – McLean Affidavit; Ex. G – Kowalski Affidavit; Ex. C – Howard Affidavit).

Plaintiff was booked at the Madison Heights Police Department by Officer Kowalski at 10:09 p.m. on July 30, 2019.  (Ex. G – Kowalski Affidavit; Ex. H – Detention Sheet).  Shortly after arriving at the Madison Heights PD, Plaintiff was brought into an interview room where he indicated that he wanted to speak to Det. Rieck.  (Ex. I – MH Video, approx. 29:00).  After waiving his *Miranda* rights, Plaintiff admitted that the methamphetamines that Trooper McLean located inside his vehicle belonged to him and he intended to sell the narcotics to other individuals. (Ex. I – MH Video, approx. 22:19:20, 22:29).  Plaintiff also expressed that he wanted to work for the Madison Heights police as a confidential informant, providing Det.

6

Rieck and Sgt. White with information regarding narcotics activity.  (Ex. I – MH Video).  During the course of his discussion with Det. Rieck and Sgt. White on the night of July 30, 2019, Plaintiff gave several details regarding Doe's involvement in the drug trade, including that Doe was his supplier and that Doe obtained large amounts of narcotics from Las Vegas.  (Ex. I – MH Video, 22:32 forward).

As Plaintiff admits in his Complaint, he agreed to cooperate with the Madison Heights police regarding their narcotics investigation, eventually signing a confidential informant agreement.  (ECF 1, ¶18; Ex. J – CI Agreement; Ex. B – White Affidavit; Ex. A – Rieck Affidavit).  "Defendant White and Defendant Rieck entered into a verbal agreement with Plaintiff which included Plaintiff not being charged with narcotics violations if Plaintiff subsequently provided information which would lead to the making of three drug cases against other persons." (ECF 1, ¶19; Ex. A – Rieck Affidavit; Ex. B – White Affidavit).  On July 31, 2019, Det. Rieck began drafting an Affidavit in Support of a Search Warrant which was presented to the Magistrate Judge and signed on August 1, 2019.  (Ex. A – Rieck Affidavit; Ex. K – Search Warrant Affidavit).  The Affidavit included information provided by Plaintiff that on August 2, 2019, a package of methamphetamines would be delivered by mail to Doe.  (Ex. K – Search Warrant Affidavit).  On August 2, 2019, the search warrant was executed and methamphetamines were seized from Doe, leading to his arrest and verifying Plaintiff's credibility as a confidential informant.  (Ex. A – Rieck Affidavit).  Shortly after the successful search warrant

7

execution, Plaintiff was released from the Madison Heights lockup, at 2:00 p.m., with no charges against him, under the promise that he would provide information leading to the narcotics arrests of two other individuals.  (Ex. A – Rieck Affidavit; Ex. B – White Affidavit).  Contrary to his agreement with Det. Rieck and Sgt. White, Plaintiff never provided that information, causing Det. Rieck to provide the police report pertaining to Plaintiff's July 30, 2019 arrest to the Oakland County Prosecutor's Office on October 1, 2019 for a charging decision.  (Ex. A – Rieck Affidavit).

On October 2, 2019, Plaintiff was charged with felony Possession with Intent to Deliver Methamphetamines by the Oakland County Prosecutor's Office.  (Ex. L – Felony Complaint).  Plaintiff was arraigned in the 47th District Court on December 2, 2019 but failed to appear for his January 3, 2020 Preliminary Examination, causing a bench warrant to issue for his arrest.  (Ex. M – Arraignment Trans; Ex. N – PE Trans 1).  On February 14, 2020, Judge Marla Parker presided over Plaintiff's Preliminary Examination, where Trooper McLean was the only witness to testify.  (Ex. D – PE Trans 2).  At the conclusion of that proceeding, Judge Parker ruled that there was probable cause to believe Plaintiff committed the crime of felony Possession with Intent to Deliver Methamphetamines and he was bound over to Circuit Court.  (Ex. D – PE Trans 2, pp. 23).  Plaintiff ultimately pled guilty to Possession of Methamphetamines on May 14, 2021.  (Ex. O – Plea Transcript).

Plaintiff has filed a Motion for Partial Summary Judgment, seeking a ruling

from this Court that there is no material issue of fact as to his 4th Amendment claim against Defendants Howard and Kowalski only.  ECF 72, Page ID913, fn5.  For the reasons set forth more thoroughly below, that Motion should be denied.

## LEGAL ARGUMENT

I.   **THERE WAS AMPLE PROBABLE CAUSE FOR PLAINTIFF'S ARREST BY THE MICHIGAN STATE POLICE AND SUBSEQUENT DETENTION AT THE MADISON HEIGHTS POLICE DEPARTMENT; THERE WAS NO "SEPARATE ARREST" OF PLAINTIFF BY OFFICER KOWALSKI OR HOWARD.**

   A.   **Plaintiff Admits that he was "Validly Arrested" by Trooper McLean and is Collaterally Estopped From Challenging the Probable Cause That Existed for His July 30, 2019 Arrest.**

As this Court has previously held, citing the admissions in Plaintiff's own pleadings, Trooper McLean "validly arrested Witzke 'for a felony state narcotics violation, probation violation, and receiving and concealing stolen property.'" ECF 54, PageID 514 (quoting ECF 1,  ¶¶ 12, 30, PageID 4, 9).  Further, a preliminary examination was held in the 47th District Court during which Judge Marla Parker heard testimony from Trooper McLean regarding Plaintiff's arrest and found that probable cause existed against Plaintiff for the felony charge of Possession With Intent To Deliver Methamphetamines.  (Ex. D – PE Trans 2, pp. 23).  Plaintiff was bound over to Circuit Court and ultimately pled guilty to the lesser included crime of felony Possession of Methamphetamines.  (Ex. O– Plea Transcript).

As this Court is well aware, collateral estoppel precludes Plaintiff from challenging his state court conviction in this federal venue.  Collateral estoppel,

known as "issue preclusion," "bars the re-litigation of issues previously decided once such issues are raised in a subsequent suit by the same parties based on a different cause of action." *Knoblauch v. Kenyon*, 163 Mich. App. 712 (1987). Complete mutuality of the parties between the first and second suit is not always required, including where the former is a criminal matter and the latter is a civil action. *Id.* at 721. The key is whether the party has had a "full and fair opportunity to litigate" the issue in question during the first suit. *Id.* It is well-established that collateral estoppel prevents a criminal defendant from relitigating issues decided in state criminal proceedings in a future federal lawsuit.

Here, the district court's bindover, as well as Plaintiff's guilty plea ,bars him from challenging the probable cause that gave rise to his arrest in the context of this civil litigation. In *Walker v. Schaeffer*, 854 F.2d 138, 142-43 (6th Cir 1988), the 6th Circuit held that even where the plaintiffs' pled no contest during their state court criminal proceedings, they were estopped from later claiming that the arresting officers acted without probable cause in a civil lawsuit. *See also Daubenmire v. Columbus*, 507 F3d 383, 390 (6th Cir 2008) (plaintiffs' pleas in state court estopped them from challenging the officers' probable cause determination in a subsequent §1983 lawsuit); *Darrah v. Oak Park*, 255 F.3d 301 (6th Cir. 2001); *Heck v Humphrey*, 512 US 477, 486 (1994)(federal lawsuit seeking damages for constitutional violations must be dismissed if judgment in favor of plaintiff would invalidate his state conviction). Given Plaintiff's bindover and criminal plea, he is

collaterally estopped from challenging the probable cause giving rise to his arrest and his illegal seizure claim against Officers Kowalski and Howard cannot succeed.[5]

**B.** **There Was No "Separate Arrest" by Officers Kowalski or Howard, But Rather a Transfer of Custody, Based on Trooper McLean's Lawful Arrest, from the Michigan State Police to the Madison Heights Police.**

To distance himself from the effect of his bindover and guilty plea, Plaintiff erroneously asserts that he was separately arrested by Officers Kowalski and Howard at the MSP North Post on July 30, 2019. This alone forms the basis of his illegal seizure claim against these Defendants. In truth, Trooper McLean, acting within his jurisdiction as an MSP Trooper made an admittedly valid arrest of Plaintiff, based on multiple potential charges, and transported him to the Metro North Post, where he was briefly held. (Ex. F – McLean Affidavit; Ex. G – Kowalski Affidavit; Ex. C – Howard Affidavit; ECF 1, ¶¶ 12, 30, PageID 4, 9). Plaintiff was under arrest at all times while present at the MSP Post and was not free to leave. (Ex. F – McLean Affidavit). The Metro North Post lacks the capacity to hold detainees, requiring Plaintiff to be lodged at another facility pending his felony charges. (Ex. F – McLean Affidavit; Ex. G – Kowalski Affidavit; Ex. C – Howard Affidavit; Ex. A – Rieck Affidavit ; Ex. B – White Affidavit). Officers Kowalski and Howard were instructed to obtain Plaintiff from the MSP Metro North Post and

---

[5] Defendants will move for summary judgment as to all of Plaintiff's claims at, or near, the close of discovery.

bring him to the Madison Heights PD's lockup for housing.  (Ex. G – Kowalski Affidavit; Ex. C – Howard Affidavit; Ex. A – Rieck Affidavit).  When they arrived at the Metro North Post, a Trooper brought Plaintiff to them and, based on Trooper McLean's initial arrest, Officers Kowalski and Howard transported Plaintiff to Madison Heights. (Ex. F – McLean Affidavit; Ex. C – Howard Affidavit; Ex. G – Kowalski Affidavit).  No new or "separate" arrest occurred as Plaintiff baselessly asserts.  (Ex. F – McLean Affidavit; Ex. C – Howard Affidavit; Ex. G – Kowalski Affidavit; Ex. A – Rieck Affidavit; Ex. B – White Affidavit).  The custody transfer from the Michigan State Police to the Madison Heights Police Department is no different from the situation where an arresting municipality lacks a facility to hold detainees and transfers custody to a Sheriff's Department for lodging.  Plaintiff cites no authority which requires that an independent source of probable cause must be established by the agency lodging the detainee where, as here, that agency did not make the initial arrest.  Factually and legally, Plaintiff has failed to establish that he is entitled to judgment as a matter of law on his illegal seizure claim against Officers Kowalski or Howard and, in fact, Defendants are entitled to summary dismissal as to this cause of action.

## II.    PLAINTIFF HAS NO EVIDENCE THAT OFFICERS KOWALSKI OR HOWARD PARTICIPATED IN THE DECISION REGARDING PLAINTIFF'S ARRAIGNMENT OR RELEASE AS ARRESTING OFFICERS.

Plaintiff further claims that Officers Kowalski and Howard are liable to him,

as a matter of law, because they did not take him before a magistrate to be arraigned within 48 hours of his arrival at the Madison Heights Police Department.  Plaintiff correctly notes that the Sixth Circuit in *Drogosch v. Metcalf*, 557 F.3d 372, 378–79 (6th Cir. 2009) held that courts "must look to state law to determine who is responsible for ensuring that a judicial determination of probable cause is made within 48 hours after an arrest." (quoting *Cherrington v. Skeeter*, 344 F.3d 631, 644 (6th Cir.2003)).  In Michigan, that law is MCL 764.13 which provides, in pertinent part:

> **[a] peace officer who has arrested a person for an offense without a warrant** shall without unnecessary delay take the person arrested before a magistrate of the judicial district in which the offense is charged to have been committed, and shall present to the magistrate a complaint stating the charge against the person arrested.

(emphasis added).  Here, neither Officer Kowalski nor Officer Howard was "a peace officer who . . . arrested [Plaintiff] for an offense without a warrant."  MCL 764.13. As discussed more thoroughly above, these officers were simply present during the transfer of custody from the MSP to the Madison Heights Police and transport of Plaintiff to the Madison Heights PD for lodging accordingly.  (Ex. F – McLean Affidavit; Ex. G – Kowalski Affidavit; Ex. C – Howard Affidavit; Ex. N – White Affidavit; Ex. A – Rieck Affidavit).  These officers did not have any further contact with Plaintiff after he was booked and were not involved in any aspect of the decision-making process regarding his arraignment, his status as a confidential informant, his release from the lockup or his subsequent criminal charges.  (Ex. G –

Kowalski Affidavit; Ex. C – Howard Affidavit; Ex. A – Rieck Affidavit).  Given the Sixth Circuit's holding in *Drogosch*, Plaintiff cannot possibly establish liability against either Officer Kowalski or Officer Howard as it relates to his detention at the Madison Heights lockup, much less an entitlement to summary judgment in his favor.

**III.   NO 4ᵀᴴ AMENDMENT LIABILITY CAN BE ESTABLISHED AGAINST OFFICERS KOWALSKI OR HOWARD BECAUSE PLAINTIFF'S REQUEST TO WORK AS A CONFIDENTIAL INFORMANT FOR THE MADISON HEIGHTS POLICE CREATED AN EXTRAORDINARY CIRCUMSTANCE JUSTIFYING HIS DETENTION FOR MORE THAN 48 HOURS.**

Even if either Officer Kowalski or Officer Howard could be deemed an "arresting officer" in satisfaction of MCL 764.13, which is contrary to the factual record, extraordinary circumstances pertain to Plaintiff's detention, justifying the 64 hours he spent in the Madison Heights lockup before being *released without charges*.  (Ex. H – Detention Sheet).  In general, a pre-trial detainee who is being held without a warrant should be brought before a magistrate within 48 hours of his arrest, but this guideline is not absolute. *County of Riverside v. McLaughlin*, 500 U.S. 44, 56 (1991). If an arrested individual is not arraigned within that timeframe, "the burden shifts to the government to demonstrate the existence of a bona fide emergency or other extraordinary circumstance." *Id*. at 57, 111 S.Ct. 1661.

This Court addressed the right to a prompt probable cause determination in *Marr v. City of Detroit*, No. CIV. 07-10931, 2009 WL 112084, at *6 (E.D. Mich. Jan. 15,

2009)(Ex. P).  As this Court explained, while "a judicial determination within 48 hours of arrest . . . generally satisfies the promptness requirement," the Court in *McLaughlin*, 500 U.S. at 56, "recognized that there needed to be some flexibility with such a requirement." *Id.* at *6.  This Court further explained:

> If an individual can prove that the probable cause determination was **<u>unreasonably delayed</u>**—reasons such as delays for the purpose of gathering additional evidence to justify the arrest, a delay motivated by ill will against the arrested individual, or delay for delay's sake—then they could successfully challenge the promptness requirement.

*Id.* at *6 (emphasis added).  Citing *McLaughlin*, the *Marr* Court acknowledged that there are situations where delay is unavoidable,

> such as transporting arrested persons from one facility to another, handling late-night bookings where no magistrate was readily available, obtaining the presence of an arresting officer who may be busy processing other suspects or securing the premises of an arrest, and other practical realities.

*Id*. at *6 (citing *McLaughlin*, 500 U.S. at 56–7).  In *Marr*, this Court found that the delay in bringing the plaintiff before a magistrate stemmed from his medical condition and not from any ill will by the defendants, attempt to procure additional evidence or "delay for delay's sake."  As such, this Court dismissed the plaintiff's delayed arraignment claim.

This Court should reach the same result.  As in *Marr*, here there was no "unreasonable delay."  It is undisputed that Plaintiff was held just long enough for Det. Rieck to execute the search warrant at John Doe's residence regarding the methamphetamine delivery that Plaintiff, voluntarily seeking to work as a

15

confidential informant, advised would arrive on August 2, 2019, and not any sooner. (Ex. K – Search Warrant Affidavit; Ex. A – Rieck Affidavit).  Given the information Plaintiff provided, his reliability as a confidential informant could not have been verified any sooner than the August 2nd mail package arriving at Doe's home.  (Ex. K – Search Warrant Affidavit).  Pursuant to the agreement between Det. Rieck and Sgt. White and Plaintiff, Plaintiff was promptly released from Madison Heights' custody, *without any criminal charges* after the search warrant execution was complete.  (Ex. A – Rieck Affidavit; Ex. C – White Affidavit; Ex. H – Detention Sheet).  This occurred less than 64 hours after he was booked, only approximately 16 hours beyond the "48 hour rule."  Plaintiff was not held for the "gathering [of] additional evidence to justify the arrest," "a delay motivated by ill will" or "delay for delay's sake."  *Marr*, 2009 WL 112084, at *6 (Ex. A – Rieck Affidavit; Ex. C - White Affidavit; Ex. K – Search Warrant Affidavit).  Plaintiff was detained, *for his benefit*, so that his credibility as a confidential informant could be established and he could be released without charges.  (Ex. A – Rieck Affidavit).  Extraordinary circumstances, borne of Plaintiff's own desire to work as an informant and escape criminal charges altogether, justified the slight extension of the 48 hour rule in this case.  Plaintiff's claim against Officers Kowalski and Howard should ultimately be dismissed.  He is not entitled to the summary judgment he seeks here.

## IV.   DEFENDANTS KOWALSKI AND HOWARD ARE ENTITLED TO QUALIFIED IMMUNITY FROM PLAINTIFF'S SUIT BECAUSE

## THEIR CONDUCT DID NOT VIOLATE PLAINTIFF'S CLEARLY ESTABLISHED CONSTITUTIONAL RIGHTS.

### A.    Qualified Immunity Principles

Qualified immunity protects government officials from §1983 liability where they are acting in their official capacities if their actions did not "violate clearly established statutory or constitutional rights of which a reasonable person would have known."  *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982) (internal cites omitted).  The issue of whether qualified immunity applies is a question of law for the courts to decide.  *Poe v. Hayden,* 853 F.2d 418, 424 (6th Cir. 1988).  "Because qualified immunity is an immunity from suit rather than a mere defense to liability . . . it is effectively lost if a case is erroneously permitted to go to trial."  *Pearson*, 555 U.S. at 231.  Defendants will move for summary judgment based on qualified immunity at or near the close of discovery based on the Court's advisement that it will entertain only one Motion for Summary Judgment from each side.  At the very least, qualified immunity bars Plaintiff's pending dispositive motion as to Defendants Kowalski and Howard.

"The principles of qualified immunity shield an officer from personal liability when an officer reasonably believes that his or her conduct complies with the law." *Pearson*, 555 U.S. at 244-45.  Government officials are entitled to qualified immunity unless it is objectively obvious that no reasonably competent official would have concluded that the conduct in question was lawful.  *Malley v. Briggs,*

475 U.S. 335, 341(1986).  If officers of reasonable competence could disagree on the legality of the action, immunity should be recognized.  "[O]fficials are not liable for bad guesses in gray areas; they are liable for transgressing bright lines." *Rudlaff v. Gillispie*, 791 F.3d 638, 644 (6th Cir. 2015) (internal quote omitted).  Because "reasonable mistakes can be made as to the legal constraints on particular … conduct," qualified immunity "protects all but the plainly incompetent or those who knowingly violate the law." *Dorsey v Barber*, 517 F3d 389, 394 (6th Cir. 2008).

In analyzing the application of qualified immunity, courts employ a two-part test and consider: (1) whether a constitutional right has been violated, and (2) whether that right was clearly established.  *Everson v. Leis*, 556 F3d 484, 494 (6th Cir. 2009).   As the Sixth Circuit has held, because immunity is appropriate in situations where officers reasonably, even if mistakenly, act, this two-part test is sometimes expanded to three parts to clarify the analysis:

> First, we determine whether, based upon the applicable law, the facts viewed in the light most favorable to the plaintiff show that a constitutional violation has occurred. Second, we consider whether the violation involved a clearly established constitutional right of which a reasonable person would have known. Third, we determine whether the plaintiff has offered sufficient evidence to indicate that what the official allegedly did was objectively unreasonable in light of the clearly established constitutional rights.

*Peete v. Metro Gov't of Nashville*, 486 F3d 217, 219 (6th Cir. 2007) (internal cites omitted). Courts may address these prongs in any order, and a plaintiff's failure to satisfy any one prong is dispositive of his claim. *Pearson*, 555 U.S. at 236.

Courts must determine whether a plaintiff has alleged sufficient facts, supported by sufficient evidence, to show that an officer's alleged actions were "objectively unreasonable in light of the clearly established constitutional rights." *Toms v. Taft*, 338 F.3d 519, 524 (6th Cir. 2003). For qualified immunity to be surrendered, "the contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates the right." *Anderson v Creighton*, 483 U.S. 635, 640 (1987); *Brosseau v. Haugen*, 543 US 194, 198-200 (2004). Although the very action in question need not have been previously held unlawful, the unlawfulness must be "apparent from direct holdings, from specific examples described as prohibited, or from the general reasoning that a court employs." *Feathers v. Aey*, 319 F.3d 843, 848 (6th Cir. 2003). When conduct is within the "hazy border" of a constitutional right, it cannot be said that a government officer violated a "clearly established" right. *Baranski v. Fifteen Unknown Agents of Bureau of ATF*, 452 F3d 433, 447 (6th Cir. 2006); *Plumhoff v. Rickard,* 134 S.Ct 2012, 2023 (2014) ("existing precedent must have placed the statutory or constitutional question confronted by the official *beyond debate*")(emphasis added)(internal cites omitted).

As the Supreme Court has made clear, "[t]he relevant, dispositive inquiry ... is whether it would be clear to a reasonable officer that his conduct was unlawful **in the situation he confronted**." *Saucier v. Katz*, 533 U.S. 194, 202 (2001), *abrogated on other grounds by Pearson*, 555 U.S. at 236 (emphasis added). Courts are tasked

with determining whether a particular right was clearly established "in light of the **specific context of the case, not as a broad general proposition**." *Saucier*, 533 U.S. at 201 (emphasis added). *See also Johnson v. Moseley*, 790 F3d 649, 654 (6th Cir. 2015); *Chappell v. Cleveland*, 585 F3d 901, 907 (6th Cir. 2009) (in evaluating the relevant case law, our courts must determine whether the right has been recognized in a particularized, relevant sense).

Importantly, the *plaintiff* bears the burden of showing that the defendants are not entitled to qualified immunity. *Chappell*, 585 F.3d at 907. The plaintiff is required to demonstrate "both that, viewing the evidence in the light most favorable to [him], a constitutional right was violated and that the right was clearly established at the time of the violation." *Id.* "If the plaintiff fails to show either that a constitutional right was violated or that the right was clearly established, [he] will have failed to carry [his] burden." *Id.*

## B. Officers Kowalski and Howard did not Violate Plaintiff's Constitutional Rights.

Under *Saucier*, the threshold question is whether a constitutional violation occurred. If it did not, Officers Kowalski and Howard are immune from Plaintiff's §1983 claim. As described more thoroughly above, these officers did not violate any of Plaintiff's constitutional rights by taking custody of Plaintiff after Trooper McLean's lawful arrest, or by virtue of Plaintiff being detained at the Madison Heights lockup in excess of 48 hours, a decision they did not influence or participate

in.  Furthermore, even if some constitutional violation was committed by either of these officers, which Plaintiff has not demonstrated, both Officer Kowalski and Officer Howard reasonably concluded that their conduct comported with the law, therefore, each is entitled to qualified immunity.  Officers Kowalski and Howard had every right to believe, based on their knowledge that Plaintiff had been arrested by Trooper McLean, that the MSP Metro North Post lacks the capacity to house detainees, and to rely on their personal observations that custody of Plaintiff was being transferred from the MSP to the Madison Heights police, such that they were justified in transporting Plaintiff to the Madison Heights lockup for lodging.  (Ex. F – McLean Affidavit; Ex. G – Kowalski Affidavit; Ex. C – Howard Affidavit).  Neither officer had any reason to believe independent probable cause needed to be established because Plaintiff was never "released" from MSP custody and no "separate arrest" was ever effectuated by either Officer Kowalski  or Howard.  (Ex. F – McLean Affidavit; Ex. G – Kowalski Affidavit; Ex. C – Howard Affidavit).

Further, given that these officers were not "arresting officers," did not have any further contact with Plaintiff following his booking, and did not have any decision-making authority as it pertained to his arraignment or release, they are entitled to qualified immunity as to Plaintiff's claim that he should have been brought before a magistrate within 48 hours.  Importantly, even if Officer Kowalski or Officer Howard was mistaken in one or more of his beliefs, this is precisely the type of lawsuit which qualified immunity is intended to protect against.  Plaintiff

certainly cannot prevail against these officers as a matter of law.

Further, binding precedent in this Circuit, specific to the facts of this of this case, must be examined to determine whether the right in question was clearly established at the time of the incident giving rise to this lawsuit. "[S]pecificity is especially important in the Fourth Amendment context, where... it is sometimes difficult for an officer to determine how the relevant legal doctrine... will apply to the factual situation the officer confronts." *Mullenix v. Luna*, 577 U.S. 7, 12, 136 S.Ct. 305, 193 L.Ed.2d 255 (2015) (per curiam). Defendants are not aware of any opinions from the Sixth Circuit or Supreme Court that existed at the time this claim arose that would have put Officers Kowalski and Howard on notice that it was a violation of Plaintiff's constitutional rights to accept a transfer of custody after an admittedly valid arrest by another police agency.

Defendants are similarly unaware of any binding precedent  existed as of July 30, 2019 which would have put either Officer Kowalski or Officer Howard on notice that he had an obligation to ensure that Plaintiff was arraigned within 48 hours where: the officer was not an "arresting officer;"[6] the plaintiff admittedly sought to

---

[6] Although Plaintiff seeks to characterize Officers Kowalski and Howard as "arresting officers," there is no support for this in the factual record and, for qualified immunity purposes, the important inquiry is the reasonable belief of these officers, who were not acting to make a separate arrest of Plaintiff on the date of the incident. (Ex. G – Kowalski Affidavit; Ex. C – Howard Affidavit). The reasonableness of this belief is supported by Trooper McLean's testimony that he also did not believe a new arrest was being effected by the Defendant Officers. (Ex. F – McLean Affidavit).

work as a confidential informant in conjunction with other officers of the Department; the plaintiff's reliability could not be assessed within 48 hours due to the nature of the information he provided; and, promptly after the plaintiff's credibility was confirmed, he was released from custody *without charges being filed*. Indeed, in a similar factual scenario, the Sixth Circuit has held that, a detainee's right to be brought before a magistrate within 48 hours was not clearly established as recently as November of 2021, more than two years after the events giving rise to Plaintiff's lawsuit. In *Roberson v. Wynkoop*, No. 21-1240, 2021 WL 5190902, at *2 (6th Cir. Nov. 9, 2021) (Ex. Q), the Sixth Circuit acknowledged that there is a generalized right to be brought before a magistrate within 48 hours, however, the "particularized circumstances" facing the defendant office must be examined to determine whether it was clearly established that he violated the plaintiff's constitutional right. In that case, a Michigan State Trooper effected a warrantless arrest of the plaintiff, who was held in the Saginaw County Jail for more than 48 hours before his probable cause hearing. *Id.* at *1. The Trooper explained that Department protocol dictated that once he completed his police report and warrant packet, he had no further involvement with the inmate and the case was then "in the hands of the court officer." *Id.* at *1. The inmate sued the Trooper based on his detention in the Jail for over 48 hours, but the Sixth Circuit affirmed the trial court's dismissal on qualified immunity grounds, holding:

> As we have noted, qualified immunity gives police officers "breathing

room to make reasonable but mistaken judgments and protects all but the plainly incompetent or those who knowingly violate the law." *Barton v. Martin*, 949 F.3d 938, 947 (6th Cir. 2020) (quoting *Stanton v. Sims*, 571 U.S. 3, 6, 134 S.Ct. 3, 187 L.Ed.2d 341 (2013) (per curiam)). This is why we often frame officers' actions through a lens of reasonableness. See *Drogosch v. Metcalf*, 557 F.3d 372, 378 (6th Cir. 2009) (citations omitted) (looking to "whether the plaintiff offered sufficient evidence to indicate that what the official allegedly did was objectively unreasonable..."). . . .

[] **Riverside and its progeny do not clearly establish that an officer in Trooper Wynkoop's position will be liable in particularized circumstances like these**. See, e.g., *Rayfield v. City of Grand Rapids*, 768 F. App'x 495 (6th Cir. 2019) (affirming a grant of qualified immunity where the plaintiff was held for nearly three days without receiving a probable cause determination hearing because of issues with his transfer between law enforcement agencies and facilities). Indeed, Roberson is not able to "identify a case that put [Wynkoop] on notice that his specific conduct was unlawful." *Rivas-Villegas v. Cortesluna*, 595 U.S. ——, —— S.Ct. ——, —— L.Ed.2d ——, 2021 WL 4822662 (2021) (per curiam). . . .

*Id.* at *1-*2; *See also Rayfield v. City of Grand Rapids*, 768 F. App'x 495 (6th Cir. 2019)(qualified immunity afforded to officers where plaintiff was held for three days before being brought before a magistrate).

This Court should deny Plaintiff's Motion for Summary Judgment as to Officers Kowalski and Howard on the same grounds.  Examining the particularized facts facing these officers, there was no existing precedent to put them on notice that they were violating Plaintiff's clearly established constitutional rights where they were not the arresting officers, had no further contact with Plaintiff after his booking and he was working with detectives in the SIU as a confidential informant whose reliability had to be established before he could be released without charges.

24

Plaintiff's Motion for Partial Summary Judgment must be denied.

ROSATI SCHULTZ JOPPICH
& AMTSBUECHLER PC

s/Holly S. Battersby  (P72023)
Attorney for Defendants
27555 Executive Drive, Ste. 250
Farmington Hills, MI  48331
(248) 489-4100
hbattersby@rsjalaw.com

DATED:  March 1, 2023

## CERTIFICATE OF SERVICE

I hereby certify that on March 1, 2023, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system, which will send notification of such filing to the following: Scott A. Witzke; and I hereby certify that I have mailed by United States Postal Service the paper to the following non-ECF participants: [NONE].

ROSATI SCHULTZ JOPPICH
& AMTSBUECHLER PC

s/  Holly S. Battersby
Attorney for Defendants Rieck, Howard,
Kowalski andWhite
27555 Executive Drive, Ste. 250
Farmington Hills, MI 48331
(248) 489-4100
hbattersby@rsjalaw.com
(P72023)

25