# EXHIBIT P

2009 WL 112084
Only the Westlaw citation is currently available.
United States District Court,
E.D. Michigan,
Southern Division.

Michael MARR, Plaintiff,
v.
CITY OF DETROIT, et al., Defendants.

Civil Case No. 07–10931.
|
Jan. 15, 2009.

West KeySummary

**1** **Arrest** Presentation to magistrate, etc.; arraignment

While a suspect was held for longer than the limit of 48 hours from the time of arrest to the probable cause hearing, this was not a violation of his Fourth Amendment rights because the delay was caused by his need for medical attention and medication which put him in no condition to participate knowingly and competently in the judicial process. The suspect had asthma, high blood pressure and was suffering from heroin withdrawal. He received an inhaler, blood pressure medication and withdrawal medication. The withdrawal medication caused him to be sleepy and incoherent. U.S.C.A. Const.Amend. 4.

**Attorneys and Law Firms**

Michael Marr, Carson City, MI, pro se.

John A. Schapka, Detroit City Law Department, Detroit, MI, for Defendants.

### ORDER OVERRULING THE PLAINTIFF'S OBJECTIONS AND ACCEPTING THE MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

STEPHEN J. MURPHY, III, District Judge.

*\*1* This is a pro se prisoner civil rights suit filed pursuant to 42 U.S.C. § 1983. The plaintiff alleges that the defendants unlawfully delayed the plaintiff's arraignment for more than 48 hours after his arrest and that the defendants unlawfully denied the plaintiff medical care and treatment while in custody. The defendants filed a motion for summary judgment.

On August 27, 2008, Magistrate Judge Pepe issued a Report and Recommendation, recommending that summary judgment be granted in favor of the defendants on both of the plaintiff's claims. The magistrate judge served the Report and Recommendation on the parties and notified the parties that any objections must be filed within ten days of service. The plaintiff filed timely

objections. For the reasons stated below, the Court overrules the plaintiff's objections and adopts the magistrate judge's Report and Recommendation.

The Court's standard of review for a magistrate judge's Report and Recommendation depends upon whether a party files objections. If a party objects to portions of the Report and Recommendation, the Court reviews those portions de novo. 28 U.S.C. § 636(b)(1) (C); Fed.R.Civ.P. 72(b)(3). De novo review in these circumstances requires at least a review of the evidence before the magistrate judge; the Court may not act solely on the basis of a magistrate judge's Report and Recommendation. *See* 12 Wright, Miller & Marcus, Federal Practice and Procedure: Civil 2d § 3070.2 (1997); *see also* Hill v. Duriron Co., 656 F.2d 1208, 1215 (6th Cir.1981). After reviewing the evidence, the Court "may accept, reject, or modify, in whole or in part, the findings or recommendations" of the magistrate judge. 28 U.S.C. § 636(b)(1) (c). In this case, the the plaintiff has filed objections to the magistrate judge's Report and Recommendation. Accordingly, the Court has conducted a de novo review of the record.

After considering the plaintiff's objections and conducting a de novo review of the record, the Court finds that the reasoning of the magistrate judge is sound and that his conclusions are correct. First, on the plaintiff's claim of delayed arraignment, the magistrate judge correctly ruled that there is no genuine issue of material fact and that as a matter of law, the defendants were entitled to summary judgment. There is no question that the plaintiff was suffering from the effects of withdrawal and of his medication, and that the delayed arraignment was due to the plaintiff's condition. Therefore, even when considering all the facts and inferences in the light most favorable to the nonmoving plaintiff, there is insufficient evidence to counter the defendants' explanation for the delay in bringing the plaintiff to an arraignment.

Second, on the plaintiff's claim of deliberate indifference to his medical needs, the magistrate judge correctly ruled that there is no genuine issue of material fact and that as a matter of law, the defendants were entitled to summary judgment. The plaintiff has failed to provide sufficient evidence supporting a claim that the defendants were deliberately indifferent to the plaintiff's medical condition. In addition, the plaintiff has failed to show supervisory liability, and has failed to show some custom or policy of the city or identify a deficiency in the training program that lead to the alleged medical neglect. In summary, when considering the facts and inferences in the light most favorable to the nonmoving plaintiff, there is insufficient evidence to support a finding by a factfinder that any of the defendants violated the plaintiff's constitutional rights. Finally, the Court finds that the magistrate judge's reasoning and ruling on the issue of qualified immunity is correct.

*2 Accordingly, after having reviewed the magistrate judge's Report and Recommendation, the plaintiff's objections, and the applicable portions of the record,

**IT IS HEREBY ORDERED** that the plaintiff's objections [docket entry # 68] to the Report and Recommendation are **OVERRULED.**

**IT IS FURTHER ORDERED** that the Report and Recommendation [docket entry # 61] is **ACCEPTED** and **ADOPTED** as the opinion of this Court.

**IT IS FURTHER ORDERED** that the motion for summary judgment filed by the defendants [docket entry # 34] is **GRANTED.**

**IT IS FURTHER ORDERED** that the plaintiff's claims are **DISMISSED WITH PREJUDICE.**

**SO ORDERED.**

## REPORT AND RECOMMENDATION

STEVEN D. PEPE, United States Magistrate Judge.

This is a pro se prisoner civil rights action brought under 42 U.S.C. § 1983. Plaintiff is currently incarcerated in Michigan Department of Corrections ("MDOC"). Defendants are the City of Detroit, the City of Detroit Police Department Fourth Precinct, Investigator Michael Jackson, Investigator Diana Broadnax, Lieutenant Michael Hinton, and Police Officers David Rios, Michael Reizen, Danny Barbee and Nichell Marble. In his Complaint, Plaintiff alleges that Defendants unlawfully delayed his arraignment for more than 48 hours after his March 27, 2004 arrest and Defendants unlawfully denied him medical care and treatment while in their custody. He requests monetary damages in the amount of one million dollars ($1,000,000) plus interest and costs.

On January 15, 2008, Defendants filed their Rule 56(b) motion for summary judgment claiming that Plaintiff is without any manner of admissible evidence with which to establish the existence of a genuine issue of material fact regarding either claim (Dkt.# 34). All pretrial matters were referred on April 20, 2007, pursuant to 28 U.S.C. § 636(b)(1)(A) (Dkt.# 7). For the reasons, indicated below, it is **RECOMMENDED** that Defendants' motion for summary judgement be **GRANTED.**

## I. BACKGROUND

   A. Factual Background

On March 27, 2004, Plaintiff and a companion, Natalie Ortiz, were traveling by car and stopped to ask for directions. Ms. Ortiz approached a man in a van who gave her directions. She then asked if he would be interested in engaging her services as a prostitute. The offended man tried to slap Ortiz at which point, Plaintiff opened the van's door and began to pull the man from the van. Several other people in the van got out and attacked Plaintiff. Ms. Ortiz used a tire iron to defend herself, and Plaintiff used a can of pepper spray. Plaintiff and Ms. Ortiz retreated to their car and drove away, Plaintiff claiming Ms. Ortiz ran over his right leg in the process (Marr July 8, 2007, Deposition, p. 72 & 74, Dkt. # 34, Exh. A). They returned to the scene after a short while to look for Plaintiff's new glasses. There were people from the van talking with police officers and calling out that Ortiz and Plaintiff were robbers—apparently having told the police that Ms. Ortiz asked for the driver's wallet. Ortiz and Plaintiff tried to get away again when another squad car intercepted them. The officers took Plaintiff and Ms. Ortiz into custody. Plaintiff does not contest the lawfulness of his arrest. At the time of incident, Plaintiff was on parole. As a result of the arrest a detainer was issued and Plaintiff's parole was revoked. [1]

 *3  Subsequent to Plaintiff's arrest, Plaintiff informed the processing officer that he had asthma, high blood pressure and would soon be suffering from the effects of heroin withdrawal. He made no mention of his leg injury to the officers, but later mentioned it to the doctors (Id. at p. 83–84). Officers Reizen and Rios transported Plaintiff to the hospital about an hour after his booking. They did not turn him over to the Police detail at the hospital, but rather took him directly to the emergency room and stayed with Plaintiff. Plaintiff was treated with a variety of medications including two shots and some oral medication causing him to fall asleep. He also received several prescriptions. Officers Reizen and Rios filled the four prescriptions including an inhaler, blood pressure medication and withdrawal medication. They returned Plaintiff with the medications to the Fourth Precinct. While in the jail after waking up, Plaintiff requested the medication and it was provided to him. A second request was also granted. The side effects of the various medications given to Plaintiff, were sleepiness and a feeling of being "incoherent." [2] Plaintiff thought the medications could be taken every 4 or 6 hour (Id. at 91, l. 6–7). The third request for the prescription medicine in the middle of the night on morning of March 29, however, was denied, the officers saying he had no medication. At about 8:30 am a female guard, who was not sued, confirmed that they had no medications and she said she would take have him taken to the hospital. (Id. at p. 95, l. 17–20). Instead she later indicated that he was to be taken to the Sixth Precinct on a parole violation after his video appearance before the magistrate at 1:30 pm. The effects of heroin withdrawal took a hold of Plaintiff, e.g. chills, vomiting, diarrhea, sneezing, headaches and muscle spasms. The jailers left his cell door open to give him unfettered access to the bathroom. Albeit Plaintiff was "very uncomfortable," [3] still he did not suffer from any serious or permanent physical injury, nor did the withdrawal aggravate his blood pressure condition or his asthma.

Fifty six and one half hours after his arrest, Plaintiff was presented to a magistrate for arraignment and probable case determination. At the preliminary examination, Plaintiff was bound over for trial on a charge of assault with intent to commit robbery. Following a remand to the Wayne County Jail at his arraignment, Plaintiff received further medical treatment at the Wayne County Jail infirmary. His withdrawal symptoms improved three hours after arrival at that facility (*Id.* at 98). After Ms. Ortiz incriminated him in a conspiracy to rob, Plaintiff in August 2004 entered a plea of no contest with a sentence agreement of 9–20 years of confinement. (*Id.* at 104–05).

### B. Procedural History

On January 2, 2008, Plaintiff filed a motion to modify scheduling order and a motion to compel answers on Plaintiff's first set of interrogatories and document request (Dkt. # 30 and # 31). This Court, on January 29, 2008, extended discovery from February 15, 2008 to May 1, 2008, ordering Defendants to respond to Plaintiff's discovery request (Dkt.# 37). Defendants failed to respond to the discovery requests by May 1, 2008. This court conducted a telephonic hearing on Plaintiff's motion to compel (Dkt.# 31) on June 23, 2008 in which both parties appeared. Plaintiff's motion was granted and the following was ordered:

**\*4** 1. Within 10 days of the order for the City of Detroit to produce to Plaintiff, or provide a declaration under 28 U.S.C. 1746 that such documents after reasonable search cannot be found to exist, the following documents as they relate to the March 2004 arrest and detention of Plaintiff:

a. Form UF 001—Review of Arrest Form;

b. Form 651—Detention Intake Form;

c. Form 659—Platoon Daily Detainee Summary Log;

d. Form 660—Medical Care Referral Form;

e. Form 661 A—Mental Health High Risk Monitoring Log;

f. Form 644—Treatment & Medical Disbursement form;

g. Form UF 008—Privilege Restriction From.

h. Any documents prepared regarding Plaintiff related to:

— Chapter 2, Sec. 3.4 on time of return from Detroit Receiving Hospital;

— Section 34.7 notice of unconscious status to the officer in charge;

— Sec. 6.1 Plaintiff's prescription medications.

2. Defense counsel to get a release signed by Plaintiff and subpoena Plaintiff's medical records from Detroit Receiving Hospital.

3. Within 10 days of the order Plaintiff was to submit Requests for Admissions under Fed.R.Civ.P. 36. Defense counsel was to notify the Court when the answers were submitted so a date for Plaintiff's supplemental response to Defendants' motion for summary judgment could be filed.

On July 2, 2008, Plaintiff, curiously, objected to the granting of his motion to District Judge Paul V. Gadola arguing that the order unfairly limited the scope of discovery (Dkt.# 46). Judge Gadola overruled Plaintiff's objections because Plaintiff failed to establish that this Court's order was "clearly erroneous" or "contrary to law" as is required by 28 U.S.C. § 626(b)(1)(A). (Dkt.# 47).

Case 4:21-cv-11346-MFL-DRG ECF No. 76-17, PageID.1130 Filed 03/01/23 Page 6 of 14
**Marr v. City of Detroit, Not Reported in F.Supp.2d (2009)**
2009 WL 112084

On July 23, 2008, Defendants notified the Court that they had complied with the order granting Plaintiff's motion to compel and provided the court with copies of the discovery documents served on the Plaintiff. Accordingly, the Court allowed Plaintiff 21 days, until August 18, 2008, to file a supplemental response to Defendants' motion for summary judgment. In the intervening weeks, Plaintiff filed numerous motions for additional discovery and to hold Defendant's motion for summary judgment in abeyance (Dkts. # 50,51,52 and 56), all of which have been denied (Dkt.# 60), but he chose not to file a supplemental response.

**II. STANDARD**

**A. Standard for Liability under § 1983**

In order to demonstrate liability under 42 U.S.C. § 1983, a plaintiff must establish that: 1) he was deprived of a right secured by the federal Constitution or laws of the United States; 2) the deprivation was caused by a person acting under color of state law; and 3) the deprivation occurred without due process of the law." *O'Brien v. City of Grand Rapids,* 23 F.3d 990, 995 (6th Cir.1994) (citing *Rhodes v. McDannel,* 945 F.2d 117, 119 (6th Cir.1991), cert. denied, 502 U.S. 1032, 112 S.Ct. 872, 116 L.Ed.2d 777 (1992)). Respondeat superior is not a basis for liability under 42 U.S.C. § 1983, *Canton v. Harris,* 489 U.S. 378, 385, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989), unless the plaintiff shows "that the supervisor encouraged the specific incident of misconduct or in some other way directly participated in it." *Bellamy v. Bradley,* 729 F.2d 416, 421 (6th Cir.1984).

**B. Summary Judgment**

*5 Under Fed.R.Civ.P. 56, summary judgment is to be entered if the moving party demonstrates there is no genuine issue as to any material fact. The Supreme Court has interpreted this to mean that summary judgment should be entered if the evidence is such that a reasonable jury could find only for the moving party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The moving party has "the burden of showing the absence of a genuine issue as to any material fact." *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 157, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970). See also *Lenz v. Erdmann Corp.,* 773 F.2d 62 (6th Cir.1985). In resolving a summary judgment motion, the Court must view the evidence in the light most favorable to the non-moving party. See *Duchon v. Cajon Co.,* 791 F.2d 43, 46 (6th Cir.1986); *Bouldis v. United States Suzuki Motor Corp.,* 711 F.2d 1319 (6th Cir.1983). But as the Supreme Court wrote in *Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986):

> [T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be "no genuine issue as to any material fact," since a complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial. The moving party is "entitled to a judgment as a matter of law" because the non-moving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof.

Moreover, when a motion for summary judgment is filed, the adverse party may not merely rely "upon the mere allegations or denials of the adverse party's pleading, but ... by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e).

Summary judgment is improper, however, if the non-movant has not been afforded a sufficient opportunity for discovery. *White's Landing Fisheries, Inc. v. Buchholzer,* 29 F.3d 229, 231–32 (6th Cir.1994), accord *Plott v. General Motors Corp.,* 71 F.3d 1190, 1195 (6th Cir.1995) (citing *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250 n. 5, 106 S.Ct. 2505, 2511

n. 5, 91 L.Ed.2d 202 (1986)), *cert. denied,* 517 U.S. 1157, 116 S.Ct. 1546 (1996). The non-movant bears the obligation to inform the district court of his need for discovery, and before a summary judgment motion is decided, he must file an affidavit pursuant to Fed.R.Civ.P. 56(f) which details the discovery needed, or file a motion for additional discovery. *Vance By and Through Hammons v. U.S.,* 90 F.3d 1145, 1149 (6th Cir.1996) (footnotes omitted). "Beyond the procedural requirement of filing an affidavit, Rule 56(f) has been interpreted as requiring that a party making such a filing indicate to the district court its need for discovery, what material facts it hopes to uncover, and why it has not previously discovered the information ." *Cacevic v. City of Hazel Park,* 226 F.3d 483, 488 (6th Cir.2000) (citation omitted). If the non-movant makes a proper and timely showing of a need for discovery, the district court's entry of summary judgment, without permitting him to conduct any discovery at all, will constitute an abuse of discretion. *Vance By and Through Hammons,* 90 F.3d at 1149.

### III. ANALYSIS

**\*6** Defendants filed a Motion for Summary Judgment, pursuant to Fed.R.Civ.P. 56, arguing that there is no genuine issue of material fact regarding either of Plaintiff's claims that Defendants unlawfully delayed his arraignment for more than 48 hours after his arrest or Defendants unlawfully denied him medical care and treatment while in their custody (Dkt.# 34, p. 2).

#### A. Plaintiff's Delayed Arraignment Claim

The Fourth Amendment to the United States Constitution provides an accused the right to a prompt probable cause determination. *County of Riverside v. McLaughlin,* 500 U.S. 44, 111 S.Ct. 1661, 114 L.Ed.2d 49 (1991). There is no bright-line rule as to when the determination should take place. But in jurisdictions (such as Michigan) where the rule is to provide a judicial determination within 48 hours of arrest, compliance with that time period generally satisfies the promptness requirement. *Id.* at 56. The Court recognized that there needed to be some flexibility with such a requirement. If an individual can prove that the probable cause determination was unreasonably delayed—reasons such as delays for the purpose of gathering additional evidence to justify the arrest, a delay motivated by ill will against the arrested individual, or delay for delay's sake—then they could successfully challenge the promptness requirement. There are, however, situations in which a delay is unavoidable such as transporting arrested persons from one facility to another, handling late-night bookings where no magistrate was readily available, obtaining the presence of an arresting officer who may be busy processing other suspects or securing the premises of an arrest, and other practical realities. *Id.* at 56–7. The arrested individual does not bear the burden of proving an unreasonable delay, rather the burden shifts to the government to establish the existence of a bona fide emergency or other extraordinary circumstance. *Id.* at 57.

In this case, there existed conditions following the arrest outside of Defendants' control that account for the delay in bringing Plaintiff for a judicial determination of probable cause. Upon his arrest, Plaintiff sought medical care for his heroin withdrawal. The Defendants arranged for his transportation and treatment at the hospital and filled his prescriptions after discharge from the hospital. By Plaintiff's own testimony, he was in no condition to participate knowingly and competently in the judicial process. The medication knocked him out and made him incoherent. Furthermore, when the prescribed medicine wore off, he suffered from withdrawal symptoms including vomiting and diarrhea such that his jail cell door was kept open to allow him quick access to the facilities.

There does not appear to be any ill-will by the Defendants towards the Plaintiff to delay him for delay's sake nor is there any evidence that the delay was necessary to obtain further evidence. Within two hours of the arrest, Co–Defendant Ms. Ortiz gave a statement to police inculpating both her and the Plaintiff.

**\*7** And finally on the point of a delayed arraignment, Plaintiff's arrest resulted in the revocation of his parole and there issued a detention order which precluded his release, whether or not bail was granted at the arraignment. The overriding goal of the prompt determination rule is to minimize the time a presumptively innocent person spends in custody. *County of Riverside* at 58

("Everyone agrees that the police should make every attempt to minimize the time a presumptively innocent individual spends in jail."). Plaintiff was to be detained irrespective of the outcome of the arraignment. This is not to say that the secondary goal of informing an individuals of the charges brought against them is not also important, rather the point is that the Plaintiff has failed to show that the delay in informing Plaintiff by way of a formal arraignment of the charges levied against him caused any damage.

Plaintiff cursorily alludes to the need for additional discovery in the heading to his delayed arraignment argument:

> Plaintiff is able to prove through additional discovery that there is a genuine issue of material fact that there is no bona fide reason for the delay in holding a judicial probable cause hearing within 24 hours

(Dkt.# 41, p. 2). The rest of Plaintiff's brief is devoid of any additional mention or support as to the nature of the additional discovery that would create a genuine issue of material fact nor is there a separate affidavit filed detailing the need for discovery, the material facts Plaintiff hopes to uncover, and why Plaintiff has not previously discovered the information. Plaintiff has been afforded ample opportunity to secure additional discovery but has failed to offer a detailed reason for the necessity of an extension of the discovery order.

Without admissible evidence to counter the defense assertion that the delay in Plaintiff's arraignment was caused by the necessary care of Plaintiff's medical condition and the debilitating effect of his withdrawal symptoms and medications, summary judgment should be granted on Plaintiff's delayed arraignment claim.

### B. Medical Treatment Claim

The Supreme Court has recognized the responsibility of the courts "to scrutinize claims of cruel and unusual confinement." *Rhodes v. Chapman,* 452 U.S. 337, 352, 101 S.Ct. 2392, 69 L.Ed.2d 59 (1981). Included as a type of conduct that violates the Eighth Amendment is a prison official's deliberate indifference to a prisoner's serious medical needs. *See, e.g., Estelle v. Gamble,* 429 U.S. 97, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976); *Westlake v. Lucas,* 537 F.2d 857, 860 (6th Cir.1976). To succeed on a claim of deliberate indifference, plaintiff must satisfy two elements, an objective one and a subjective one. He must show he had a serious medical need, and he must show that defendant, being aware of that need, acted with deliberate indifference to it. *Wilson v. Seiter,* 501 U.S. 298, 300 (1991).

A medical need is "serious" if it has been diagnosed by a physician as requiring treatment or is so obvious that a lay person would easily recognize the necessity for a doctor's attention. *Monmouth County Correctional Inst. Inmates v. Lanzaro,* 834 F.2d 326, 347 (3d Cir.1987), *cert. denied,* 486 U.S. 1006, 108 S.Ct. 1731, 100 L.Ed.2d 195 (1988). A serious ailment requires immediate attention or is potentially life-threatening: "A 'serious' medical need exists if the failure to treat a prisoner's condition could result in further significant injury or the 'unnecessary and wanton infliction of pain.' " *McGuckin v. Smith,* 974 F.2d 1050, 1059 (9th Cir.1992) (citation omitted). The fact that a plaintiff endured unnecessary pain and suffering is sufficient for an Eighth Amendment claim. *Id.* In *Westlake v. Lucas,* the Sixth Circuit stated that "a prisoner who is needlessly allowed to suffer pain when relief is readily available does have a cause of action against those whose deliberate indifference is the cause of his suffering." *Westlake,* 537 F.2d at 859.

**\*8** "Deliberate indifference" has been variously defined by the federal courts that have considered prisoners' Eighth Amendment claims, but all agree that it is more than mere negligence and less than actual intent. In *Farmer v. Brennan,* 511 U.S. 825, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994), the Supreme Court explained the meaning of "deliberate indifference ."

> [A] prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; *the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference....* Eighth Amendment suits against prison officials must satisfy a "subjective" requirement ....

511 U.S. at 836–37 (emphasis supplied). *See also* *Estelle v. Gamble,* 429 U.S. at 105–106 (a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim under the Eighth Amendment; "medical malpractice does not become a constitutional violation merely because the victim is a prisoner"); *Sanderfer v. Nichols,* 62 F.3d 151, 154 (6th Cir.1995) (deliberate indifference is the equivalent of "criminal recklessness, which requires a subjective showing that the defendant was aware of the risk of harm"); *Gibson v. Foltz,* 963 F.2d 851, 853 (6th Cir.1992) ( "[o]bduracy or wantonness, not inadvertence or good faith error, characterizes deliberate indifference"). Accordingly, even "gross negligence" by prison officials is insufficient to support a deliberate indifference claim. *Ribble v. Lucky,* 817 F.Supp. 653, 655 (E.D.Mich.1993).

As noted in *Estelle,* "[i]n order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." *Estelle,* 429 U.S. at 106. Delay in access to medical attention can violate the Eighth Amendment when it is "tantamount to 'unnecessary and wanton infliction of pain.' " *Hill v. DeKalb Regional Youth Detention Center,* 40 F.3d 1176, 1187 (6th Cir.1994) (quoting *Brown v. Hughes,* 894 F.2d 1533, 1537 (11th Cir.) (per curiam), *cert. denied,* 496 U.S. 928, 110 S.Ct. 2624, 110 L.Ed.2d 645 (1990)). But it is incumbent upon an inmate who complains of a delay in medical treatment to place verifying medical evidence in the record to establish the detrimental effect of the delay. *Napier v. Madison County,* 238 F.3d 739, 742 (6th Cir.2001).

Plaintiff indeed suffered pain and discomfort from the effects of heroin withdrawal. Pain, in and of itself, is not tantamount to an Eighth Amendment violation. From the record, it appears that Defendants Rios and Reizen responded quickly to Plaintiff's medical needs. Upon being informed that Plaintiff expected to suffer from heroin withdrawal, these two Defendants took him to the emergency room where he received medical attention, medication and prescriptions to help ease his symptoms. These Defendants filled the prescription for him at the pharmacy. Plaintiff was later provided him with two doses of the medication at the jail. It is likely that the arresting officers, Defendants Rios and Reizen, were no longer involved with Plaintiff. He does not identify the individuals at the jail who failed to respond to Plaintiff's third request. This went unheeded resulting in Plaintiff feeling "very uncomfortable" for an extended period of time. There is no evidence regarding the unavailability of Plaintiff's medication or who was responsible for that apparent loss of those prescriptions that Defendants Rios and Reizen got filled. The non-defendant female guard who saw Plaintiff at 8:30 am confirmed that he had no medications and believed he should be returned to the hospital. Plaintiff makes general allegations that all Defendants were responsible or that the City of Detroit and the Fourth Precinct through their employees were responsible for the alleged wrongs (See e.g. Complaint at ¶ ¶ 18. 20 & 30).

Yet, supervisory liability under § 1983 must be based on more than the right to control employees, and cannot be imposed solely on the basis of *respondeat superior.* *Bellamy v. Bradley,* 729 F.2d 416, 421 (6th Cir.1984). Rather, there must be "a showing that the supervisor encouraged the specific incident of misconduct or in some other way directly participated in it. At a minimum, a § 1983 plaintiff must show that a supervisory official at least implicitly authorized, approved or knowingly acquiesced in the unconstitutional conduct of the offending subordinate." *Id.* Plaintiff has made no such showing with regard to the supervisors at the Fourth Precinct.

**\*9** With regard to municipal liability of the City of Detroit, Plaintiff must show the neglect in having his initial criminal appearance within 48 hours and his alleged medical neglect were due to some custom or policy of the city. *Monell v. Dept. of Social Services,* 436 U.S. 658, 690–91, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). As with supervisors in the *Bellamy* case, the Court in *Monell* rejects government liability based on the doctrine of *respondeat superior.* Thus, a government body cannot be held liable under § 1983 merely because it employs a tortfeasor. 436 U.S. at 691–92.

*City of Canton v. Harris,* 489 U.S. 378, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989), like this case, involved a plaintiff claiming a deprivation of her right to receive necessary medical care while in police custody. She asserted a claim of municipal liability for this deprivation based on a theory of "grossly inadequate training." In determining the level of culpability required in "failure to train" cases, the Court went on to hold that "the inadequacy of training policy may serve as the basis for § 1983 liability only where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact." *Id.* at 388. The Court observed that:

> [I]t may happen that in light of the duties assigned to specific officers or employees the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the city can reasonably be said to have been deliberately indifferent to the need. In that event, the failure to provide proper training may fairly be said to represent a policy for which the city is responsible, and for which the city may be held liable if it actually causes injury. [footnotes omitted]
>
> The "deliberate indifference" standard has nothing to do with the level of culpability that may be required to make out the underlying constitutional wrong, but rather has to do with what is required to establish the municipal policy as the "moving force" behind the constitutional violation.

*Id.* at 388 n. 8.

The Court made it clear that on remand the plaintiff would have to identify a particular deficiency in the training program and prove that the identified deficiency was the actual cause of plaintiff's constitutional injury. It would not be enough to establish that the particular officer was inadequately trained, nor that there was negligent administration of an otherwise adequate program, nor that the conduct resulting in the injury could have been avoided by more or better training. The federal courts are not to become involved "in an endless exercise of second-guessing municipal employee-training programs." *Id.* at 390–91.

In the present case, Plaintiff has no evidence of any policy or any particular deficiency in the training program that resulted in his injury and was so deficient that a fact finder could determine the City of Detroit was deliberately indifferent to Plaintiff's withdrawal symptom or his not having his initial appearance within 48 hours of his arrest.

**\*10** Plaintiff has failed to provide medical evidence that the delay from the second dosage to the time he received care at the Wayne County Jail caused any serious or permanent physical damage or injury. Yet, even accepting that symptoms for heroin withdrawal constitute a serious medical need, there were substantial efforts taken to deal with these symptoms and to get him needed medications. Defendants Rios and Reizen acted swiftly to get Plaintiff medical attention and medication for his condition. There is no evidence in the record to indicate that these two Defendants were deliberately indifferent to Plaintiff's medical needs nor that these arresting officers remained at the Precinct after returning Plaintiff from the hospital with his medication. Others at the precinct twice provided him medications. It was two unidentified persons at the Fourth Precinct who told him that they did not have medication for him that led to his difficulties. There is no evidence these two are Defendants in this litigation. This third request for medication went unheeded because those on duty said they could not find his medication. There is no evidence that either of these individuals was knowingly lying and withholding medication.

At 5:30 a.m., Plaintiff insisted on being taken before a judicial officer for a probable cause hearing (Complaint at ¶ 19). At 8:30 a.m., he requested mediation for withdrawal symptoms. (*Id.* at ¶ 20). The woman guard at that time confirmed that there

Case 4:21-cv-11346-MFL-DRG ECF No. 76-17, PageID.1135 Filed 03/01/23 Page 11 of 14
Marr v. City of Detroit, Not Reported in F.Supp.2d (2009)
2009 WL 112084

was no medication for Plaintiff and she thought Plaintiff should be taken to the hospital, but apparently decisions by others that Plaintiff possibly should be taken to the Sixth Precinct, later changed to his being available for the 1:30 pm video appearance before the magistrate and then taken to the county jail interfered with any such consideration that he needed to be returned to the hospital. Plaintiff alleged it was Defendant Hinton who denied his request for medical treatment and prepared for the video appearance before the magistrate that Plaintiff had requested. (*Id.* at 20). After that arraignment he was taken to the Wayne County Jail around 7 p.m., medication was once again provided to him at the Wayne County Jail infirmary which by three hours later provided relief. While it can be assumed that better decisions could have been made throughout the day of March 29, 2004, than is demonstrated by the halting, possibly conflicting and inadequate progression of events involving several different actors, mere negligence is insufficient to constitute a constitutional violation. *Daniels v. Williams,* 474 U.S. 327 (1986). Mere negligence does not rise to the criminal recklessness, obduracy or willfulness needed to find unnecessary and wanton infliction of pain that constitutes deliberate indifference.

On these present facts no fact finder could conclude that this amounted to anything more than inadvertence or a negligent error. Whoever made the decisions that day is unknown, and there is no showing any of the Defendants named in this case acted in violation of Plaintiff's constitutional rights. Without more there is insufficient evidence to make out a deliberate indifference claim or a violation of Plaintiff's right to a prompt probable cause determination under *County of Riverside v. McLaughlin.* (Dkt.# 34, Ex. A, p. 98, lns.9–11).

**\*11** Finally, it should be noted that the confusion on March 29, 2004, appears to have been compounded by the competing demands of Plaintiff's two constitutional claims—a delayed initial court appearance and delayed medical treatment. The court delay was initially necessary caused by Plaintiff's medical condition and his need for immediate medical treatment on March 28 and a need for his regaining a degree of coherence. Then on March 29 delay in additional medical care for his withdrawal symptoms was caused in part by the 1:30 p.m. arraignment. While taking the medication, Plaintiff by his own admission was in no condition to knowingly and actively participate in the arraignment because of the side effect of drowsiness on March 28. He said he was incoherent and even lost consciousness. (Marr July 8, 2007, Deposition, at p. 88 & p. 93, Dkt. # 34, Exh. A) Without the medication, he was uncomfortable but able to appear for the video court hearing on March 29. It appears likely that another trip to the hospital on the morning of March 29 would have led to a further delay of Plaintiff's initial court appearance. While the Defendants may have made the wrong decision on the priorities in dealing with Plaintiff on March 29—it may be that they should have taken care of Plaintiff's immediate medical needs and produced him for arraignment later, even on March 30 if needed—but any such fault on the present facts is nothing more than negligence which does not rise to the level of deliberate indifference.

Defendants should be granted summary judgement because no reasonable trier of fact could, on the current record, find that they were deliberately indifferent to Plaintiff's serious medical needs nor intentionally violated his right to a prompt probable cause determination.

### C. Qualified Immunity

Defendants raised the issue of immunity as an affirmative defense in their answer to the complaint (Dkt.# 6). Because none of the Defendants are entitled to absolute immunity, it is assumed this is an affirmative defense claim of qualified immunity. Government officials who perform discretionary functions are generally entitled to qualified immunity from individual liability for civil damages so long as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982); *see also Christophel v. Kukulinsky,* 61 F.3d 479, 484 (6th Cir.1995); *Thomas v. Whalen,* 51 F.3d 1285, 1289 (6th Cir.1995), *cert. denied,* 516 U.S. 989, 116 S.Ct. 518, 133 L.Ed.2d 426 (1995); *Pray v. Sandusky,* 49 F.3d 1154, 1157–58 (6th Cir.1995). While a plaintiff may use a generalized "notice" form of complaint, once a defense of qualified immunity is asserted, the plaintiff must respond with "specific, non-conclusory allegations of fact that will enable the district court to determine that those facts, if proved, will overcome the defense of qualified immunity." *Id.* at 922. The Sixth Circuit has held that if a defendant raises a

qualified immunity defense, the plaintiff bears the burden of showing that the constitutional right alleged to have been violated was clearly established at the time of the alleged violation. *Ohio Civil Serv. Employees Ass'n v. Seiter,* 858 F.2d 1171, 1174 (6th Cir.1988); *Dominique v. Telb,* 831 F.2d 673, 676 (6th Cir.1987). "[I]n the ordinary instance, to find a clearly established constitutional right, a district court must find binding precedent by the Supreme Court, its court of appeals, or itself." *Seiter,* 858 F.2d at 1177.

**\*12** Qualified immunity seeks to ensure that defendants "reasonably can anticipate when their conduct may give rise to liability," *Davis v. Scherer,* 468 U.S. 183, 195, 104 S.Ct. 3012, 82 L.Ed.2d 139 (1984), by imposing liability only if "[t]he contours of the right [violated are] sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton,* 483 U.S. 635 640, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987). "[I]n effect the qualified immunity test is simply the adaption of the fair warning standard to give officials (and, ultimately, governments) the same protections from civil liability and its consequences that individuals have traditionally possessed in the face of vague criminal statutes." *United States v. Lanier,* 520 U.S. 259, 117 S.Ct. 1219, 1227, 137 L.Ed.2d 432 (1997). Splits of authority among the circuits is "a circumstance [that] may be taken into account in deciding whether the warning is fair enough" but it is not a categorical bar to a finding of liability. *Id.* To be "clearly established" there need not be prior relevant case law "on all fours" or deciding "the very action in question." *Anderson,* 483 U.S. at 640. [4] *See also McBride v. Village of Michiana,* 100 F.3d 457, 461 (6th Cir.1996). *McCloud v. Testa,* 97 F.3d 1536, 1557 (6th Cir.1996), noted that if courts required prior precedent on the specific facts at issue in the pending case, "qualified immunity would be converted into a nearly absolute barrier to recovering damages against an individual government actor...."

The Supreme Court in *Siegert v. Gilley,* 500 U.S. 226, 111 S.Ct. 1789, 114 L.Ed.2d 277 (1991), set out the "analytical structure under which a claim of qualified immunity should be addressed." The Court is to determine whether the plaintiff has alleged the violation of a clearly established constitutional right. This is a purely legal question. It involves two steps. The first step is to determine whether the alleged conduct violates any constitutionally protected right at all. The second step is to determine whether that constitutional right was clearly established at the time of the defendant's action or failure to act. If the answer to the first question is in the negative, the Court need not consider the second question because if no constitutional right exists, no such right would have been clearly established.

The question whether an official is protected by qualified immunity does not turn on the subjective good faith of the defendants, but rather turns on the "objective legal reasonableness" of the action, assessed in light of the legal rules that were clearly established at the time it was taken. *Harlow,* 457 U.S. at 818–19; *Mackay v. Dyke,* 29 F.3d 1086, 1094 (6th Cir.1994). Qualified immunity is appropriate either on the basis that the right allegedly violated was not at the time "clearly established," or if "clearly established," was one that a "reasonable" person in the defendant's position could have failed to appreciate would be violated by his conduct. *Pray v. Sandusky,* 49 F.3d 1154, 1157 (6th Cir.1995) (quoting *Anderson,* 483 U.S. at 640). Thus, even where the general rule is clearly established, it may be open to question whether the defendant's specific action comes withing the scope of the general rule. Officials may be entitled to qualified immunity when their decision is reasonable, even though mistaken, in determining that their action did not fall within the scope of a clearly established general rule. *Id.* The Supreme Court urges that the lower courts follow the *Siegert* sequence and first determine whether plaintiff has alleged a constitutional deprivation at all before considering—or too readily determining—that it was not clearly established.

**\*13** Here it is determined above that there is insufficient evidence that any of the named Defendants violated Plaintiff's constitutional rights. Defendants chosen course of action in trying both to care for Plaintiff's medical needs and to avoid any unnecessary delays in his initial court appearance. While it may be that their efforts at this balancing act were mistaken it cannot be said that it was clearly unconstitutional. Thus, even if this Court were to find a constitutional violation under the first part of the *Seiter* standard, reasonable police officers would differ as to whether the actions of the Defendants on March 28, 2004, at

Case 4:21-cv-11346-MFL-DRG ECF No. 76-17, PageID.1137 Filed 03/01/23 Page 13 of 14
Marr v. City of Detroit, Not Reported in F.Supp.2d (2009)
2009 WL 112084

the Fourth Precinct violated the general legal standards concerning adequate medical care and a prompt probable cause hearing. Officers might differ as to the seriousness of Plaintiff's medical condition and what was the appropriate response. This case lies on the "hazy border between" what is legally permitted and what is legally required. "[T]he question is close and difficult. It involves subtle legal distinctions and inferences that a reasonable police officer would not and could not be expected to make." *Reynolds v. City of Anchorage,* 379 F.3d 358, 364, 366, 367 (6th Cir.2004). "If the officer's mistake as to what the law requires is reasonable ... the officer is entitled to the immunity defense." *Solomon v. Auburn Hills Police Department,* 389 F.3d 167, 176 (6th Cir.2004) In this case the Defendants' actions or inactions did not fall within the scope of a clearly established rule and therefore, even if their failings were found to be unconstitutional, the Defendants would be afforded qualified immunity.

**V. CONCLUSION**

For these reason it is RECOMMENDED that Defendants Motion for Summary Judgment be GRANTED. The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections on or before September 15, 2008, as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Howard v. Sec'y of HHS,* 932 F.2d 505 (6th Cir.1991); *United States v. Walters,* 638 F.2d 947 (6th Cir.1981). Filing of objections which raise some issues but fail to raise others with specificity, will not preserve all the objections a party might have to this report and recommendation. *Willis v. Sec'y of HHS,* 931 F.2d 390, 401 (6th Cir.1991); *Smith v. Detroit Fed'n of Teachers Local 231,* 829 F.2d 1370,1373 (6th Cir.1987). Pursuant to E.D. Mich. LR 72(d)(2), a copy of any objections is to be served upon this Magistrate Judge. Within ten (10) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than twenty (20) pages in length unless by motion and order such page limit is extended by the Court. The response shall address specifically, and in the same order raised, each issue contained within the objections. A party may file a reply brief within 5 days of service of a response. The reply shall be not more than five (5) pages in length unless by motion and order such page limit is extended by the Court.

**All Citations**

Not Reported in F.Supp.2d, 2009 WL 112084

**Footnotes**

1    (*Id* at. p. 108, l 8–20).

2    (*Id.* at p. 86, l. 12–18, p. 89, l. 2).

3    (Dkt. # 54, Exhibit A p. 98, lns 9–11).

4    As noted in *United States v. Lanier,* 520 U.S. 259, 117 S.Ct. 1219, 1227, 137 L.Ed.2d 432 (1997), there is no single level of specificity sufficient in every instance. In some circumstance, as when an earlier case expressly leaves open whether a general rule applies to the particular type of conduct at issue, a very high degree of prior factual particularity may be necessary. [citation omitted] But general statements of law are not inherently incapable of giving fair and clear warning, and in other instances a general constitutional rule already identified in the decisional law may apply with obvious clarity to the specific conduct in question, even though "the very action in question has [not] previously been held unlawful, *Anderson, supra,* at 640 ....

**End of Document** © 2023 Thomson Reuters. No claim to original U.S. Government Works.