# EXHIBIT Q

Case 4:21-cv-11346-MFL-DRG ECF No. 76-18, PageID.1140 Filed 03/01/23 Page 2 of 4

Roberson v. Wynkoop, Not Reported in Fed. Rptr. (2021)
2021 WL 5190902

🚩 **KeyCite Yellow Flag - Negative Treatment**
Distinguished by [Brown v. Knapp,](#) E.D.Mich., September 28, 2022

2021 WL 5190902
Only the Westlaw citation is currently available.
United States Court of Appeals, Sixth Circuit.

Danny Andre ROBERSON, Plaintiff-Appellant,
v.
Darrell WYNKOOP, Michigan State Trooper, Defendant-Appellee.

No. 21-1240
|
FILED November 09, 2021

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF MICHIGAN

**Attorneys and Law Firms**

Danny Andre Roberson, Jackson, MI, Pro Se.

Adam Robert de Bear, Office of the Attorney General of Michigan, Lansing, MI, for Defendant - Appellant.

BEFORE: [SILER](#), [KETHLEDGE](#), and [BUSH](#), Circuit Judges.

**Opinion**

PER CURIAM.

**\*1** Darrell Wynkoop, a Michigan State Trooper, arrested Danny Roberson without a warrant after responding to a domestic dispute between Roberson and his girlfriend. Wynkoop found Roberson, a felon, in possession of a firearm and drug paraphernalia. The district court held that Wynkoop's failure to bring Roberson before a judicial officer for a probable-cause determination within 48 hours violated Roberson's constitutional rights and that such rights were clearly established. It then denied Wynkoop qualified immunity. For the reasons set forth below, we reverse.

I.

On October 4, 2016, Michigan State Police Troopers Darrell Wynkoop and Daniel Inman responded to a report of domestic violence occurring at a residence in Buena Vista, Michigan. Upon arrival, the troopers observed Roberson and his girlfriend, Christell Lee, in a heated argument in front of the residence. Lee informed Wynkoop that Roberson was a felon, had hidden a firearm in the house when he saw the troopers approaching, and had recently been cutting up illegal drugs. A search of the residence revealed a firearm and drug paraphernalia. Wynkoop placed Roberson under arrest without a warrant and booked him into the Saginaw County, Michigan jail at approximately 1:00 A.M. on October 5.

Wynkoop completed his incident report and requested a search warrant and an arrest warrant the morning of October 6, more than 24 hours after Roberson was initially booked into the jail. He did nothing further with Roberson. As Wynkoop stated, "[o]nce the report and warrant packet is placed in the in-custody bin, it is out of [his] hands and in the hands of the court officer[,]" who then would handle getting the local prosecutor to review the request.

Case 4:21-cv-11346-MFL-DRG ECF No. 76-18, PageID.1141 Filed 03/01/23 Page 3 of 4

Roberson v. Wynkoop, Not Reported in Fed. Rptr. (2021)
2021 WL 5190902

The warrants were signed by the assistant prosecutor that same day, but a judicial officer did not hold the probable-cause-determination hearing or sign the arrest warrant until the next morning, October 7. Thus, Roberson was held in the Saginaw County Jail for more than 48 hours before his probable-cause determination. Roberson has never disputed that there was probable cause for his arrest. Indeed, he eventually pleaded guilty to various charges for his possession of the firearm and drugs. But he claims harm because the probable cause hearing was not held sooner.

Roberson sued under 42 U.S.C. § 1983, which provides in pertinent part:

> Every person who under color of any statute, ordinance, regulation, custom, or usage, of any State... subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress...

42 U.S.C. § 1983. "To state a claim under 42 U.S.C. § 1983, a plaintiff must set forth facts that, when construed favorably, establish (1) the deprivation of a right secured by the Constitution or laws of the United States (2) caused by a person acting under the color of state law." *Sigley v. City of Parma Heights*, 437 F.3d 527, 533 (6th Cir. 2006) (citations omitted).

*2 The § 1983 claim alleges that Wynkoop failed to bring Roberson before a judicial officer for a probable-cause determination within 48 hours of his arrest as required by Michigan Compiled Laws § 764.13. That, Roberson argued, violated his Fourth Amendment rights.

Wynkoop moved for summary judgment based on qualified immunity, which the district court denied. *See Roberson v. Wynkoop*, No. 19-10285, 2021 WL 486609, at *1 (E.D. Mich. Feb. 10, 2021). Wynkoop argues on appeal that he did not subject Roberson to a deprivation of his constitutional rights and that there is no binding precedent that would have placed him on notice that his conduct was unlawful.

II.

We review de novo the denial of summary judgment on the issue of qualified immunity. *Gardenhire v. Schubert*, 205 F.3d 303, 310 (6th Cir. 2000) (citing *Mitchell v. Forsyth*, 472 U.S. 511, 512, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985)). "We analyze whether an officer is entitled to qualified immunity using two steps: (1) whether the defendant violated a constitutional right; and (2) whether that constitutional right was clearly established at the time of the alleged violation." *Wright v. City of Euclid*, 962 F.3d 852, 864 (6th Cir. 2020) (citing *Fazica v. Jordan*, 926 F.3d 283, 289 (6th Cir. 2019); *Saucier v. Katz*, 533 U.S. 194, 201, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001). We need not address these arguments in any particular order. *See Ashcroft v. al-Kidd*, 563 U.S. 731, 735, 131 S.Ct. 2074, 179 L.Ed.2d 1149 (2011); *see also Pearson v. Callahan*, 555 U.S. 223, 242, 129 S.Ct. 808, 172 L.Ed.2d 565 (2009) ("[T]he district courts and the courts of appeals are in the best position to determine the order of decisionmaking that will best facilitate the fair and efficient disposition of each case.").

Wynkoop argues that even if he violated Roberson's constitutional rights, those rights were not clearly established at the time of the violation and, therefore, his actions were not objectively unreasonable. We agree. For a right to be clearly established, "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that

Case 4:21-cv-11346-MFL-DRG ECF No. 76-18, PageID.1142 Filed 03/01/23 Page 4 of 4

Roberson v. Wynkoop, Not Reported in Fed. Rptr. (2021)
2021 WL 5190902

right." *Anderson v. Creighton*, 483 U.S. 635, 640, 107 S.Ct. 3034, 97 L.Ed.2d 523, (1987); *see also Ashcroft*, 563 U.S. at 741, 131 S.Ct. 2074 (2011) ("[E]xisting precedent must have placed the statutory or constitutional question beyond debate.").

As we have noted, qualified immunity gives police officers "breathing room to make reasonable but mistaken judgments and protects all but the plainly incompetent or those who knowingly violate the law." *Barton v. Martin*, 949 F.3d 938, 947 (6th Cir. 2020) (quoting *Stanton v. Sims*, 571 U.S. 3, 6, 134 S.Ct. 3, 187 L.Ed.2d 341 (2013) (per curiam)). This is why we often frame officers' actions through a lens of reasonableness. See *Drogosch v. Metcalf,* 557 F.3d 372, 378 (6th Cir. 2009) (citations omitted) (looking to "whether the plaintiff offered sufficient evidence to indicate that what the official allegedly did was objectively unreasonable...").

We have previously held that the holding of *County of Riverside v. McLaughlin*, 500 U.S. 44, 111 S.Ct. 1661, 114 L.Ed.2d 49 (1991), "would have alerted a reasonable official to [ ] the existence of the Fourth Amendment right to a judicial determination of probable cause within 48 hours[.]" *Drogosch*, 557 F.3d at 379. However, *Riverside* and its progeny do not clearly establish that an officer in Trooper Wynkoop's position will be liable in particularized circumstances like these. *See, e.g., Rayfield v. City of Grand Rapids*, 768 F. App'x 495 (6th Cir. 2019) (affirming a grant of qualified immunity where the plaintiff was held for nearly three days without receiving a probable cause determination hearing because of issues with his transfer between law enforcement agencies and facilities). Indeed, Roberson is not able to "identify a case that put [Wynkoop] on notice that his specific conduct was unlawful." *Rivas-Villegas v. Cortesluna*, 595 U.S. ––––, ––– S.Ct. ––––, ––– L.Ed.2d ––––, 2021 WL 4822662 (2021) (per curiam); *see also Mullenix v. Luna*, 577 U.S. 7, 12, 136 S.Ct. 305, 193 L.Ed.2d 255 (2015) (per curiam) ("[S]pecificity is especially important in the Fourth Amendment context, where... it is sometimes difficult for an officer to determine how the relevant legal doctrine... will apply to the factual situation the officer confronts.").

**\*3** Additionally, Wynkoop's reliance on a common procedure—the use by state law enforcement agencies of local jails to hold those they arrest—was not objectively unreasonable. The Michigan State Police do not own or operate their own jails. Instead, state troopers rely on other agencies and actors in the criminal justice system to ensure that arrestees receive their probable cause determination. Further, there are no facts in the record to indicate that Wynkoop (or any of his fellow state troopers) have previously encountered this situation, so it was not objectively unreasonable for Wynkoop to expect the process to occur in a timely manner as it normally does. Wynkoop's actions here make him neither a willful violator of the law nor plainly incompetent.

Because Wynkoop's actions did not violate clearly established law and because we do not have the benefit of adequate briefing from either party, we need not address the first prong of the qualified immunity analysis here. See *Pearson*, 555 U.S. at 239, 129 S.Ct. 808.

III.

For the reasons listed above, we **REVERSE** the district court's order denying summary judgment.

**All Citations**

Not Reported in Fed. Rptr., 2021 WL 5190902

---

**End of Document** © 2023 Thomson Reuters. No claim to original U.S. Government Works.